### 76258. A. H. FRIEDMAN, INC. v. AUGUSTA BURGLAR ALARM COMPANY et al.

(368 SE2d 534)

DEEN, Presiding Judge.

Appellant Friedman, Inc. (Windsor), contracted with appellee Augusta Burglar Alarm Co., Inc. (Augusta), to install and service a burglar alarm system which would register at the 911 center if a break-in were to occur. The system required a dedicated telephone line, which was furnished and installed by appellee Southern Bell. On July 25, 1982, a red light flashed and a buzzer sounded at the 911 center. Personnel there determined that the signals indicated a break-in at Windsor, and a patrol car was dispatched, arriving in approximately three minutes. The front door was locked and showed no signs of forcible entry; all the jewelry cases had been neatly cleared, however, and the safe had been burned open and rifled of all the merchandise it contained, as well as certain costly equipment used in the jewelry business. The terminal for the burglar alarm, which was located on the wall five feet above a stair ascending the side of a nearby building, was found to have been tampered with; a pair of wires clearly marked "Windsor Jewelers Burglar Alarm" had been disconnected, as had other wires in the unlocked terminal box. Subsequent investigation indicated that, because the burned safe was cold, the actual entry must have taken place five to six hours before the burglars left the store, apparently sounding the alarm at that time. The burglar alarm itself was missing; the burglars had presumably taken it with them.

Windsor brought an action against Augusta and Southern Bell, alleging negligence. An additional count alleging breach of contract was brought against Southern Bell. On each count plaintiff/appellant sought to recover $536,000, the amount at which the stolen goods were valued. Windsor filed a motion *in limine* that evidence of insurance payments be excluded; this was denied. Southern Bell filed an *in limine* motion that evidence that Windsor employees had taken polygraph tests be excluded; this was granted. Windsor contended that Southern Bell was negligent in not acceding to Windsor's requests that appellee remove the label from the wires, lock the box, or move the box to a secure location. Southern Bell was apparently pursuing the theory that the burglary was an "inside job."

Windsor sought a certificate of immediate review, alleging that OCGA § 51-12-1 (b) applies only to personal injury claims and is only prospective in application. We granted the application, and on appeal Windsor enumerates as error the trial court's denial of its motion *in limine*, expressly on the basis that OCGA § 51-12-1 (b) permitted evidence of insurance, and the granting of Southern Bell's motion regarding exclusion of polygraph evidence. *Held:*

1. We first address the propriety of the trial court's ruling on the motion regarding polygraph evidence. "The present rule in Georgia is that the results of polygraph examinations are not admissible into evidence, absent an express stipulation by the parties that they shall be admissible. *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). This rule applies to civil actions. [Cits.] With regard to evidence of the mere fact that a polygraph examination has been given, our Supreme Court has held as follows: '. . . [T]he mere fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as to the result is raised, or *if* any inferences that might be raised as to the result are not prejudicial. This determination should not, of course, encourage attempts to introduce evidence concerning lie detectors . . .'" *Munford, Inc. v. Anglin*, 174 Ga. App. 290, 294 et seq. (329 SE2d 526) (1985). In *Anglin* the court went on to hold, at 294, that, because polygraph examinations are unreliable, evidence concerning their use should be admitted "only when clearly relevant and unmistakably nonprejudicial." *Stack v. State*, 234 Ga. 19, 24 (214 SE2d 514) (1975). We find no merit in this enumeration.

2. Windsor alleges that OCGA § 51-12-1 (b), which in effect negates the operation of the "collateral source" rule in Georgia, applies to personal injury only and not to property damage. This subsection became effective July 1, 1987; the instant case went to trial September 8, 1987. By its terms, subsection 1 (b) provides in pertinent part that "[i]n any civil action . . . for the recovery of damages arising from a tortious injury in which special damages are sought to be recovered . . . , evidence of all compensation, indemnity, insurance (other than life insurance), wage loss replacement, income replacement, or disability benefits or payments available to the injured party from any and all governmental or private sources and the cost of providing and the extent of such available benefits or payments shall be admissible for consideration by the trier of fact. The trier of fact, in its discretion, may consider such available benefits or payments and the cost thereof but shall not be directed to reduce an award of damages accordingly." The statute makes no distinction between personal injury and injury to property but employs the inclusive term "tortious injury" without any qualification. We are not persuaded, either by appellant's arguments purporting to distinguish between "injury" and "damage," or by its further argument regarding the purported non-applicability of the sub-section in cases where subrogation rights are involved, that the legislature intended that the statute's effect be confined to such a narrow scope as appellant advocates.

3. Appellant further contends, however, that, because the cause of action accrued before July 1, 1987, the subsection is inapplicable to the instant case. If OCGA § 51-12-1 (b) be construed as substantive, this is correct; if procedural, then the converse is true. OCGA § 1-3-5;

*Talmadge v. Cordell*, 170 Ga. 13 (152 SE 91) (1930); *Pritchard v. Savannah St. & R. Co.*, 87 Ga. 294 (13 SE 493) (1891). "Laws looking only to the remedy or mode of trial may apply to contracts, rights, and offenses entered into, accrued, or committed prior to their passage." OCGA § 1-3-5. "A change . . . in rules of evidence is considered remedial; and remedial changes in law may validly operate retroactively." *Bryan v. Bryan*, 242 Ga. 826, 829 (251 SE2d 566) (1979).

In *Polito v. Holland*, 258 Ga. 54 (365 SE2d 273) (1988), the Supreme Court construed this section and decided the issue in appellant's favor. We quote relevant portions from this recent decision.

"2. Generally statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. [Cits.] On the other hand, where a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention. [Cits.] These rules guide us to the result required in this case once it is determined whether OCGA § 51-12-1 (b) is procedural (evidentiary) or substantive. In order to do that we must consider the collateral source rule as it existed prior to the enactment of OCGA § 51-12-1 (b).

"3. Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations. [Cits.] The collateral source rule is primarily substantive in nature. It gives a party the right to recover damages undiminished by collateral benefits. It refuses credit to the benefit of a tortfeasor of money or services received by the plaintiff in reparation of the injury or damage caused which emanate from sources other than the tortfeasor. [Cits.] 'The collateral source rule, stated simply, is that the receipt of benefits or mitigation of loss from sources other than the defendant will not operate to diminish the plaintiff's recovery of damages.' R. Sedler, The Collateral Source Rule and Personal Injury Damages: The Irrelevant Principle and the Functional Approach, 58 Ky. L. Rev. 36, 38 (1969). Apparently the rule came into Georgia law through the opinion of Judge Samuel Lumpkin in *The Western & Atlantic Railroad v. Meigs*, 74 Ga. 857 (1885). . . .

"For a resolution of the case at hand it is important to understand there are two consequences of the collateral source rule. One is substantive and is that damages are not reduced by the amount of collateral benefits plaintiff receives. The other consequence of the rule is evidentiary in effect. Because of the substantive consequence of the rule, evidence of collateral benefits is not generally material. . . . The substantive collateral source rule removes the proposition as an issue in the case and the evidence rule of materiality precludes proof of collateral benefits. *Barrett v. Western & Atlantic R. Co.*, 144 Ga. 47 (85 SE 1016) (1915); *Partridge v. Lee*, 116 Ga. App. 800 (159 SE2d

113) (1967). To the extent the rationale of *Bryan v. Bryan*, 242 Ga. 826 (251 SE2d 566) (1979) [supra] differs with that expressed here, it will not be followed. . . .

"With the foregoing in mind the law regarding the collateral source rule could be altered either to work a substantive change or a procedural change. To change the substantive consequence of the collateral source rule the law would provide that collateral benefits shall reduce damages. Evidence of collateral benefits would, of course, be material under such a substantive rule. To change the procedural consequence of the collateral source rule the law would be that an exception to the evidentiary rule of materiality is that collateral benefits are admissible. The judge would instruct the jury that collateral benefits shall not reduce damages. What effect should be given such evidence is difficult to say unless the substantive rule is also changed, but a mere change in the procedural rule is at least theoretically possible.

"4. . . .

"We note . . . that the statute clearly works a procedural (evidentiary) change of law because evidence of collateral benefits becomes admissible whereas it was formerly considered immaterial. If the statute required that the trier of fact be charged to reduce damages by collateral benefits it would clearly work a substantive change of law also. However, the statute requires no such charge. In fact such a charge is prohibited. The statute only provides that the trier of fact 'in its discretion, may consider' collateral benefits. We construe this to mean the trier of fact may reduce damages according to collateral benefits or not reduce damages. It is within the discretion of the trier of fact. This works a substantive change of law since damages *may*, under the statute, be reduced by collateral benefits, contrary to prior law.

"5. OCGA § 51-12-1 (b) works a substantive change in the law governing collateral benefits. There is no expressed or clear intention of the legislature to give the statute retroactive effect. Therefore it shall be given prospective effect only . . ." Under *Polito v. Holland*, then, appellant is correct, and the trial court improperly denied the motion.

*Judgment reversed. Carley, J., concurs in Divisions 1 and 3 and in the judgment. Sognier, J., concurs in Divisions 1 and 2 and in the judgment.*

DECIDED APRIL 4, 1988.

*H. Andrew Owen, Jr., Perry A. Phillips*, for appellant.

*Gail D. Stebbins*, for appellees.