### A08A2332. GRIFFIN v. BANKSTON et al.
(671 SE2d 873)

BERNES, Judge.

Monyouette Griffin brought this dental malpractice action against Dr. Stephen Bankston, Atlanta Oral & Facial Surgery, LLC, and Atlanta Orthofacial Surgicenter, LLC, alleging that Dr. Bankston acted negligently by not administering or prescribing an antibiotic in connection with the surgical extraction of her wisdom teeth. The case went to trial and the jury returned a verdict in favor of the defendants. On appeal, Ms. Griffin contends that the trial court improperly (1) excluded documentary evidence and testimony regarding a telephone conversation memorialized in her dental insurance records; (2) excluded deposition testimony from one of her treating physicians concerning the physician's personal practice of administering an antibiotic as a preventative measure; and (3) prohibited her from introducing into evidence an admission concerning the standard of care made by Dr. Bankston during his deposition. Finding no reversible error, we affirm.

The record reflects that on November 19, 2001, Ms. Griffin sought dental care from Dr. Bankston, an oral and maxillofacial surgeon, for intermittent tooth pain. Dr. Bankston reviewed Ms. Griffin's dental x-rays, performed an oral examination, and determined that she needed two of her wisdom teeth surgically extracted. At trial, Ms. Griffin presented documentary evidence allegedly showing that Dr. Bankston also diagnosed her with acute pericoronitis, an active inflammation around a tooth. In contrast, Dr. Bankston testified that he had only determined that Ms. Griffin had a past history of pericoronitis based upon her complaints, and that there were no signs of active inflammation or infection at the time of the exam.

---

[2] 285 Ga. App. 411 (646 SE2d 505) (2007).

Following the initial exam, surgery was set for November 30, 2001. Dr. Bankston surgically extracted Ms. Griffin's two wisdom teeth on that date as scheduled. On the day of the surgery, Ms. Griffin's symptoms had not changed from the time of her initial exam on November 19. Dr. Bankston did not administer or prescribe penicillin or any other antibiotic to Ms. Griffin before, during, or after her surgery.

On December 1, 2001, Ms. Griffin's face and neck swelled to such an extent that she began having difficulty breathing and was rushed to the hospital by her parents. Upon arrival at the hospital, Ms. Griffin underwent an emergency tracheotomy to open and preserve her airway. The treating physicians determined that Ms. Griffin was suffering from a virulent bacterial infection that was "odontogenic," or "from the tooth," in origin. To combat the infection, Ms. Griffin was placed on a powerful combination of antibiotics and underwent two surgeries for the placement of drainage tubes in her face, mouth, and neck. The specific antibiotics given to Ms. Griffin are commonly used for treating penicillin-resistant bacteria. The treatment regime ultimately proved successful and, after an extended hospital stay, Ms. Griffin was able to return home and to work.

Before her hospitalization, Ms. Griffin had a history of vitiligo, a skin disorder that causes loss of pigment. Following her hospitalization, Ms. Griffin lost all pigmentation on substantial portions of her face, neck, chest, arms, and hands. Ms. Griffin now must wear thick opaque makeup to cover areas of her skin affected by the vitiligo.

Ms. Griffin attributed the virulent bacterial infection that she suffered, and the subsequent exacerbation of her vitiligo, to Dr. Bankston's failure to provide her with penicillin before, during, or after her oral surgery. She presented expert testimony from a board certified oral surgeon that Dr. Bankston's failure to provide penicillin fell below the applicable standard of care, in light of Ms. Griffin's alleged acute pericoronitis combined with other risk factors. The same expert testified that if penicillin had been given, Ms. Griffin would not have developed a massive infection requiring hospitalization. Finally, Ms. Griffin presented expert testimony from a board certified dermatologist who attributed the spread of her vitiligo to her bacterial infection and the resulting swelling and surgical trauma.

In contrast, Dr. Bankston maintained that even if Ms. Griffin suffered from acute pericoronitis at the time of her initial exam and subsequent surgery (a diagnosis which he disputed), he was not required to give penicillin under the applicable standard of care. Specifically, he presented expert testimony from a board certified oral surgeon that the standard of care did not require the giving of an antibiotic to a patient who presented with acute pericoronitis, unless

there were also clinical signs of a bacterial infection. And, according to the expert, the intermittent pain complained of by Ms. Griffin, standing alone, was an insufficient sign of such an infection, given the lack of other clinical signs such as pus, redness, swelling, bad odor, difficulty opening the mouth, or flesh hot to the touch.

Dr. Bankston also maintained that even if the standard of care had required him to give penicillin, Ms. Griffin still would have experienced a massive bacterial infection requiring hospitalization. According to his oral surgeon expert, penicillin would not have prevented Ms. Griffin's severe infection because her lab cultures taken during her hospitalization confirmed that her infection included a penicillin-resistant form of bacteria. Likewise, Dr. Robert Hunt, the oral surgeon who treated Ms. Griffin during her hospitalization, testified that penicillin would not have been effective in light of Ms. Griffin's "mixed flora" infection that included bacteria resistant to that antibiotic.

After hearing all of the evidence, the jury returned a verdict in favor of the defendants, and judgment was entered accordingly. This appeal followed.

1. Ms. Griffin contends that the trial court erred by excluding documentary evidence and testimony regarding a telephone conversation memorialized in her insurance file maintained by her insurer, CIGNA Dental. The conversation was between a CIGNA Dental representative and an individual identified only as "Kiana"[1] and apparently concerned the preapproval of Ms. Griffin's surgery. The notation in the file made by the CIGNA Dental representative read as follows: "EXPLAIEND [sic] TO KIANA FOR #16 AND #17[2] ADDED AND PER OS RATIONALE IS PERIOCORNITIS [sic]. EXPLAIEND [sic] SUB TO REVIEW." According to Ms. Griffin, the trial court should have admitted the notation of the conversation and testimony about the notation under the business record exception to the rule against hearsay.

Pretermitting whether the documentary evidence and testimony regarding the telephone conversation were properly excluded, we find no basis for reversal. Ms. Griffin sought to introduce evidence of the telephone conversation to show that Dr. Bankston had made and reported to the insurance company a diagnosis of acute pericoronitis, so as to rebut his claim at trial that Ms. Griffin only had a past history of pericoronitis. Significantly, however, Ms. Griffin was able to introduce other evidence to rebut Dr. Bankston's claim. In

---

[1] Dr. Bankston denied that a person with this name ever worked in his office.

[2] Sixteen and seventeen were the numbers of the wisdom teeth that were extracted by Dr. Bankston.

particular, she successfully introduced Dr. Bankston's physician notes from the November 19 exam in which he wrote, among other things, the word "pericoronitis" under the section entitled "Exam" rather than under the section entitled "PMH," past medical history. She also successfully introduced two business records generated by Dr. Bankston's office — a chart entitled "OMS Basic Services" dated November 19 and an insurance billing sheet dated November 30 — which listed the diagnostic code for acute pericoronitis in the section of those records entitled "Diagnosis."

"An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." (Punctuation and footnote omitted.) *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, 683 (7) (a) (634 SE2d 802) (2006). Because the documentary evidence and testimony regarding the telephone conversation was cumulative of other properly admissible evidence, its exclusion, even if error, was harmless. See *Murray v. Barrett*, 257 Ga. App. 438, 439 (1) (571 SE2d 448) (2002) (exclusion of evidence concerning loan application was harmless because it "was merely cumulative of other evidence"); *Evans v. DeKalb County Hosp. Auth.*, 154 Ga. App. 17, 18 (1) (267 SE2d 319) (1980) (exclusion of death certificate was harmless because same information was included in properly admitted autopsy report); *Arrington v. Andrews*, 152 Ga. App. 572, 574 (3) (263 SE2d 491) (1979) (exclusion of exhibits was harmless when the information sought to be obtained from them was admitted through witness testimony). Accordingly, the trial court did not commit reversible error by excluding evidence of the telephone conversation.

2. Ms. Griffin next argues that the trial court erred by excluding deposition testimony from Dr. Hunt concerning his personal oral surgery practices. The trial court allowed the introduction of almost all of Dr. Hunt's deposition testimony. However, the trial court excluded the portion of the deposition in which Dr. Hunt testified that his personal practice is to administer penicillin as a preventative measure when he extracts impacted wisdom teeth, although "the literature supports not doing that as well." According to Ms. Griffin, she should have been permitted to introduce this deposition testimony in order to impeach Dr. Hunt's claim at trial that penicillin would not have prevented her massive bacterial infection.

Both this Court and the Supreme Court of Georgia have previously decided this issue adversely to Ms. Griffin. Under established precedent, testimony concerning what course of treatment an expert physician personally would have followed is irrelevant in a medical malpractice action and is inadmissible either to directly establish the applicable standard of care or to impeach the expert's testimony concerning what standard of care should apply. See *Johnson v.*

*Riverdale Anesthesia Assoc.*, 275 Ga. 240, 241-242 (1), 242-243 (2), 243 (3) (563 SE2d 431) (2002); *Condra v. Atlanta Orthopaedic Group*, 292 Ga. App. 276, 278-279 (1), 279 (2) (664 SE2d 281) (2008), cert. granted, 2008 Ga. LEXIS 910 (Case No. S08G1833, Oct. 6, 2008). Similarly, we do not see how Dr. Hunt's testimony concerning the general course of treatment he follows for his own patients would be relevant to impeach his testimony concerning whether penicillin would have specifically prevented Ms. Griffin's unique infection in this case. As such, the trial court correctly excluded Dr. Hunt's deposition testimony concerning his personal oral surgery practices.

3. Lastly, Ms. Griffin maintains that the trial court erred by prohibiting her from introducing into evidence an admission concerning the standard of care made by Dr. Bankston in his deposition. Dr. Bankston testified during his deposition that the applicable standard of care requires oral surgeons to treat acute pericoronitis before extracting a wisdom tooth. At trial, counsel for Ms. Griffin attempted to have Dr. Bankston read this excerpted deposition testimony into evidence at the start of his cross-examination. When opposing counsel objected, the trial court ruled that Ms. Griffin's counsel could not have the witness simply read the excerpts into evidence in lieu of asking the witness questions in front of the jury. The trial court further noted, however, that counsel could ask Dr. Bankston the same question asked in the deposition, and if he answered differently, impeach him with the admission made in his deposition testimony. Ms. Griffin's counsel responded, "I will simply ask him the question and see what his answer is and if it's necessary to do the impeachment drill, I will do it as the Court has instructed me."

Ms. Griffin argues that the trial court erred in its ruling because the Georgia Civil Practice Act, OCGA § 9-11-32 (a), authorizes the use of an opposing party's deposition "for any purpose," not just impeachment. Again, we find no ground for reversal. The trial court did not prohibit Ms. Griffin from getting before the jury Dr. Bankston's admission that the applicable standard of care requires oral surgeons to treat acute pericoronitis before surgery. Indeed, the trial court did not issue a final ruling at all, but simply indicated that it would not allow the admission to be read into evidence unless Dr. Bankston contradicted his prior admission when asked about the standard of care at trial. And, significantly, when Dr. Bankston did in fact contradict himself later during his cross-examination, counsel for Ms. Griffin moved on and chose not to impeach him with his prior admission. Because Ms. Griffin did not avail herself of this opportunity to use Dr. Bankston's admission, she cannot complain on appeal that she was prohibited from introducing the admission at trial. See

*Corsini v. State*, 238 Ga. App. 383, 386 (3) (519 SE2d 39) (1999); *O'Neal v. Oxendine*, 237 Ga. App. 171, 176 (2) (514 SE2d 908) (1999). *Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED DECEMBER 24, 2008 —

*Roy E. Barnes, John R. Bevis*, for appellant.
*Smith, Gambrell & Russell, Matthew S. Coles*, for appellees.