## A08A2332. GRIFFIN v. BANKSTON et al.
### (691 SE2d 229)

BERNES, Judge.

Monyouette Griffin brought this dental malpractice action to recover damages stemming from Dr. Stephen Bankston's alleged negligence in failing to administer an antibiotic before, during, or after the surgical extraction of her wisdom teeth.[1] The case went to trial and the jury returned a verdict in favor of Dr. Bankston. In *Griffin v. Bankston*, 295 Ga. App. 387, 390-391 (2) (671 SE2d 873) (2008), we relied upon precedent of the Supreme Court of Georgia and of this Court to conclude that the trial court correctly excluded deposition testimony from one of Ms. Griffin's treating physicians concerning the physician's personal practice of administering an antibiotic as a preventive measure. The Supreme Court, however, remanded the case to this Court for reconsideration in light of *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667, 669-672 (1) (681 SE2d 152) (2009), where the Supreme Court overruled that prior line of precedent. Upon reconsideration, we conclude that the trial court committed reversible error by excluding the physician's testimony. Accordingly, we vacate our prior judgment, and we reverse and remand for a new trial.

The record reflects that on November 19, 2001, Ms. Griffin sought dental care from Dr. Bankston, an oral and maxillofacial surgeon, for intermittent tooth pain. Dr. Bankston reviewed Ms. Griffin's dental x-rays, performed an oral examination, and determined that she needed two of her wisdom teeth surgically extracted. At trial, Ms. Griffin presented documentary evidence allegedly showing that Dr. Bankston also diagnosed her with acute pericoronitis, an active inflammation around a tooth. In contrast, Dr. Bankston testified that he had only determined that Ms. Griffin had a past history of pericoronitis based on her complaints, and that there were no signs of active inflammation or infection at the time of the exam.

Following the initial exam, surgery was set for November 30, 2001. Dr. Bankston surgically extracted Ms. Griffin's two wisdom teeth on that date as scheduled. On the day of the surgery, Ms. Griffin's symptoms had not changed from the time of her initial exam on November 19. Dr. Bankston did not administer or prescribe penicillin or any other antibiotic to Ms. Griffin before, during, or after her surgery.

On December 1, 2001, Ms. Griffin's face and neck swelled to such

---

[1] Ms. Griffin also sued Atlanta Oral & Facial Surgery, LLC, and Atlanta Orthofacial Surgicenter, LLC. The defendants will be referred to collectively as "Dr. Bankston."

an extent that she began having difficulty breathing and was rushed to the hospital by her parents. Upon arrival at the hospital, Ms. Griffin underwent an emergency tracheotomy to open and preserve her airway. The treating physicians determined that Ms. Griffin was suffering from a virulent bacterial infection that was "odontogenic," or "from the tooth," in origin. To combat the infection, Ms. Griffin was placed on a powerful combination of antibiotics and underwent two surgeries for the placement of drainage tubes in her face, mouth, and neck. The specific antibiotics given to Ms. Griffin are commonly used for treating penicillin-resistant bacteria. The treatment regime ultimately proved successful and, after an extended hospital stay, Ms. Griffin was able to return home and to work.

Before her hospitalization, Ms. Griffin had a history of vitiligo, a skin disorder that causes loss of pigment. Following her hospitalization, Ms. Griffin lost all pigmentation on substantial portions of her face, neck, chest, arms, and hands. Ms. Griffin now must wear thick opaque makeup to cover areas of her skin affected by the vitiligo.

Ms. Griffin attributed the virulent bacterial infection that she suffered, and the subsequent exacerbation of her vitiligo, to Dr. Bankston's failure to provide her with penicillin before, during, or after her oral surgery. She presented expert testimony from a board certified oral surgeon that Dr. Bankston's failure to provide penicillin fell below the applicable standard of care, in light of Ms. Griffin's alleged acute pericoronitis combined with other risk factors. The same expert testified that if penicillin had been given, Ms. Griffin would not have developed a massive infection requiring hospitalization. Finally, Ms. Griffin presented expert testimony from a board certified dermatologist who attributed the spread of her vitiligo to her bacterial infection and the resulting swelling and surgical trauma.

In contrast, Dr. Bankston maintained that even if Ms. Griffin suffered from acute pericoronitis at the time of her initial exam and subsequent surgery (a diagnosis which he disputed), he was not required to give penicillin under the applicable standard of care. Specifically, he presented expert testimony from a board certified oral surgeon that the standard of care did not require the giving of an antibiotic to a patient who presented with acute pericoronitis, unless there were also clinical signs of a bacterial infection. And, according to the expert, the intermittent pain complained of by Ms. Griffin, standing alone, was an insufficient sign of such an infection, given the lack of other clinical signs such as pus, redness, swelling, bad odor, difficulty opening the mouth, or flesh hot to the touch.

Dr. Bankston also maintained that even if the standard of care had required him to give penicillin, Ms. Griffin still would have experienced a massive bacterial infection requiring hospitalization.

According to his oral surgeon expert, penicillin would not have prevented Ms. Griffin's severe infection because her lab cultures taken during her hospitalization confirmed that her infection included a penicillin-resistant form of bacteria. Likewise, Dr. Robert Hunt, the oral surgeon who treated Ms. Griffin during her hospitalization, testified that he did not believe that administering penicillin would have been effective in light of Ms. Griffin's "mixed flora" infection that included bacteria resistant to that antibiotic.

After hearing all of the evidence, the jury returned a verdict in favor of the defendants, and judgment was entered accordingly. This appeal followed.

1. Ms. Griffin argues that the trial court erred by excluding deposition testimony from Dr. Hunt concerning his personal oral surgery practices. Specifically, Dr. Hunt testified that his personal practice is to administer penicillin as a preventive measure when the wisdom teeth are impacted and when a steroid is also given. According to Ms. Griffin, she should have been permitted to introduce this deposition testimony in order to impeach Dr. Hunt's testimony at trial that the administration of penicillin would not have made a difference in Ms. Griffin's case.

In our initial decision, we relied upon established precedent holding that testimony concerning what course of treatment an expert physician personally would have followed is irrelevant and inadmissible in a medical malpractice action. See *Griffin*, 295 Ga. App. at 390-391 (2), citing *Johnson v. Riverdale Anesthesia Assoc.*, 275 Ga. 240, 241-242 (1), 242-243 (2), 243 (3) (563 SE2d 431) (2002). But in the recent case of *Condra*, 285 Ga. at 669-672, the Supreme Court of Georgia overruled this line of precedent and held that evidence of a physician's personal practices was admissible on cross-examination as substantive evidence and to impeach the expert's opinion as to the applicable standard of care.

As a threshold matter, Dr. Bankston argues that *Condra* has no bearing on the present case because it should only be applied prospectively to cases tried after that decision. Alternatively, he argues that even if *Condra* applies retroactively, it is distinguishable from the present case because Dr. Hunt did not provide expert testimony regarding the applicable standard of care. Neither argument is persuasive.

(a) In *Findley v. Findley*, 280 Ga. 454, 460 (1) (629 SE2d 222) (2006), the Supreme Court of Georgia held that a judicial decision should be applied retroactively unless the decision itself expresses that it should be given prospective effect, or the equities favor prospective application under the three-pronged test set forth in *Chevron Oil Co. v. Huson*, 404 U. S. 97, 106-107 (II) (92 SC 349, 30 LE2d 296) (1971). See also *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709,

712 (3) (300 SE2d 673) (1983). Under the three prongs of *Chevron Oil Co.*, 404 U. S. at 106-107 (II), a court must:

(1) Consider whether the decision . . . established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. (2) Balance the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation. (3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.

(Citation and punctuation omitted.) *Findley*, 280 Ga. at 456, n. 1.

Applying these principles to the case at hand, we conclude that *Condra* should be given retroactive application. The Supreme Court did not state that its decision in *Condra* should only be applied prospectively, and the equities favor retroactive application under the three prongs of *Chevron Oil Co.*, 404 U. S. at 106-107 (II).

As to the first prong, while *Condra* did overrule clear past precedent, that does not end the inquiry. See *Ellis v. State*, 272 Ga. 763, 764-765 (1) (534 SE2d 414) (2000); *Hosp. Auth. of Fulton County v. Litterilla*, 199 Ga. App. 345, 348 (1) (404 SE2d 796) (1991), rev'd on other grounds, *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992). Indeed, the general rule is that a decision overruling prior precedent is applied retrospectively. See *Ellis*, 272 Ga. at 764-765 (1); *Walker v. Walker*, 247 Ga. 502, 503 (277 SE2d 45) (1981); *Mut. Life Ins. Co. of N.Y. v. Barron*, 70 Ga. App. 454, 463 (28 SE2d 334) (1943). Furthermore, as the Supreme Court acknowledged in *Condra*, the decision to overrule existing precedent and permit the cross-examination of an expert on his or her personal practices was foreshadowed by recent statutory developments and the practice of other jurisdictions. See *Condra*, 285 Ga. at 669-672 (1). Therefore, the first prong of the test does not demand a prospective application of the new legal principle established in *Condra*. See *Hosp. Auth. of Fulton County*, 199 Ga. App. at 348 (1).

As to the remaining two prongs, we note that the purpose and effect of *Condra* was simply to revise a rule of evidence, which was procedural in nature, and it is well established that such a revision should be applied retroactively. See *Lunsford v. State*, 260 Ga. App. 818, 823 (4), n. 3 (581 SE2d 638) (2003). See also *Mason v. The Home Depot U.S.A.*, 283 Ga. 271, 278-279 (4) (658 SE2d 603) (2008); *Bryan*

*v. Bryan*, 242 Ga. 826, 828-829 (2) (251 SE2d 566) (1979); *A. H. Friedman, Inc. v. Augusta Burglar Alarm Co.*, 186 Ga. App. 769, 771 (3) (368 SE2d 534) (1988).[2] Selective temporal application in such a context would retard the operation of the new evidentiary rule by creating two classes of litigants governed by two different rules of evidence, which would foster neither clarity nor consistency in the law. Moreover, parties assume the risk that evidentiary rules may be modified or revised midstream during the course of litigation, see, e.g., *Lunsford*, 260 Ga. App. at 823 (4), and so retroactive application in this circumstance does not produce substantial inequitable results.

In sum, the first prong does not compel prospective application of the new evidentiary rule announced in *Condra*, while the second and third prongs counsel in favor of retroactive application of the rule to all pending cases. Thus, the equities favor applying *Condra* retroactively to the present case under the three-pronged test of *Chevron Oil Co.*, 404 U. S. at 106-107 (II).

(b) Application of *Condra* to the instant case requires that we reverse the jury verdict and remand for a new trial. It is true that Dr. Hunt did not offer an expert opinion concerning the standard of care, but we do not view that fact as dispositive to the analysis. The Supreme Court in *Condra* pointed out that under Georgia law, the jury is charged with the duty of evaluating the credibility of an expert's testimony, and a party has a substantial right to a "vigorous cross-examination" of an opposing party's expert. (Citation and punctuation omitted.) *Condra*, 285 Ga. at 671 (1). The Supreme Court reasoned that

> [n]either the jury's ability to perform its role as arbiter of the expert's credibility, nor the party's right to a thorough and sifting cross-examination, is well served by a prohibition on cross-examination of the opposing party's expert regarding personal practices that differ from the standard of care as asserted by that expert.

(Citation and punctuation omitted.) Id. at 671 (1).

The same reasoning employed by the Supreme Court would apply to any case where evidence of the physician's personal practices could be construed by the jury as calling into question the credibility of the physician's testimony at trial, irrespective of whether the physician was a standard of care expert. In any such

---

[2] This is not a case where the defendant had a vested substantive right that would be affected negatively by the Supreme Court's decision overruling prior precedent. Compare *FinanceAmerica Corp. v. Drake*, 154 Ga. App. 811, 818-819 (270 SE2d 449) (1980).

case, "[n]either the jury's ability to perform its role as arbiter of the expert's credibility, nor the party's right to a thorough and sifting cross-examination," would be "well served" by excluding the evidence on cross-examination. (Citation and punctuation omitted.) *Condra*, 285 Ga. at 671 (1).

Here, evidence of Dr. Hunt's personal practice of routinely administering an antibiotic to his patients as a preventive measure could be construed by a jury as calling into question the credibility of his trial testimony that the failure to administer an antibiotic was of no significance in Ms. Griffin's case. Put another way, evidence that Dr. Hunt routinely took the same precaution to guard against infection that he now claimed would not have made a difference in the present case arguably called into question the credibility of such a claim. Consequently, under the reasoning of *Condra*, the trial court erred in excluding the evidence of Dr. Hunt's personal practice, and, in doing so, undermined the jury's ability to fully evaluate Dr. Hunt's credibility and deprived Ms. Griffin of her substantial right to a thorough and sifting cross-examination.

Furthermore, the trial court's error in excluding Dr. Hunt's testimony was not harmless. The present case involved a classic battle of the experts, and the testimony of Dr. Hunt may have carried particular weight with the jury, in that he was a treating physician rather than an expert hired by one of the respective parties. Indeed, counsel for the defendants emphasized this point in closing argument:

> Dr. Hunt is paid by no one. Dr. Hunt is a disinterested witness who followed Ms. Griffin in the hospital. I would submit to you that his opinion is certainly worthy of belief.

Under these circumstances, the exclusion of Dr. Hunt's testimony regarding his personal oral surgery practices warrants reversal. See *Condra*, 285 Ga. at 672 (1). See also *Cornelius v. Macon-Bibb County Hosp. Auth.*, 243 Ga. App. 480, 484 (1) (a) (533 SE2d 420) (2000) ("A material abridgement or denial of the substantial right of cross-examination of opposing witnesses is material error and requires the grant of a new trial.") (citation omitted).

2. Because the issue may recur on retrial, we will consider Ms. Griffin's contention that the trial court erred by excluding documentary evidence and testimony regarding a telephone conversation memorialized in her insurance file maintained by her insurer, CIGNA Dental. The telephone conversation was between a CIGNA

Dental representative and an individual identified only as "Kiana"[3] and apparently concerned the preapproval of Ms. Griffin's surgery. The notation in the file made by the CIGNA Dental representative read as follows: "EXPLAIEND [sic] TO KIANA FOR #16 AND #17[4] ADDED AND PER OS RATIONALE IS PERIOCORNITIS [sic]. EXPLAIEND [sic] SUB TO REVIEW." According to Ms. Griffin, the trial court should have admitted the notation of the telephone conversation and testimony explaining the notation under the business record exception to the rule against hearsay.[5] We disagree.

The business record exception applies only to "a memorandum or record of any act, transaction, occurrence, or event" offered "in proof of the act, transaction, occurrence, or event." OCGA § 24-3-14 (b). Under well established Georgia law, however, a written record of a telephone conversation is not considered "a memorandum or record of [an] act, transaction, occurrence, or event" as contemplated by the business record exception. See *Bailey v. Edmundson*, 280 Ga. 528, 533 (4) (630 SE2d 396) (2006); *White v. Regions Bank*, 275 Ga. 38, 41 (2) (b) (561 SE2d 806) (2002); *Mitchell v. State*, 254 Ga. 353, 355 (5) (a) (329 SE2d 481) (1985); *Bishop Contracting Co. v. North Ga. Equip. Co.*, 203 Ga. App. 655, 657 (2) (417 SE2d 400) (1992); *Maryfield Plantation v. Harris Gin Co.*, 116 Ga. App. 744, 747 (4) (159 SE2d 125) (1967). Accordingly, the trial court correctly excluded the notation of the telephone conversation and testimony explaining the notation. See id.

3. Ms. Griffin's final enumeration of error is unlikely to recur on retrial of the case and thus is moot.

*Judgment reversed and case remanded. Andrews, P. J., and Doyle, J., concur.*

DECIDED DECEMBER 31, 2009 —
RECONSIDERATION DENIED MARCH 8, 2010 — 

*Roy E. Barnes, John R. Bevis*, for appellant.

---

[3] Dr. Bankston denied that a person with this name ever worked in his office.

[4] Sixteen and seventeen were the numbers of the wisdom teeth that were extracted by Dr. Bankston.

[5] The CIGNA Dental representative did not have any independent personal recollection of the contents of the telephone conversation. As such, this is not a case where the contents of the telephone conversation could potentially be introduced into evidence through the testimony of a party to the call rather than through a written record of the conversation. Compare *Easterling v. Bell*, 29 Ga. App. 465 (116 SE 50) (1923).

*Coles & Barton, Matthew S. Coles, Aaron P. M. Tady*, for appellees.