### A11A0247. SAYE v. PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY.
(714 SE2d 614)

MCFADDEN, Judge.

William Saye sued Provident Life and Accident Insurance Company ("Provident") for breach of an insurance contract and bad faith failure to pay benefits. The trial court bifurcated the two claims, with the expectation that trial would proceed on bad faith only if Saye first prevailed on the contract issue. The jury ultimately rejected Saye's breach of contract claim, and the trial court entered judgment for Provident.

On appeal, Saye argues that the trial court erred in bifurcating the proceedings. But the trial court was responsible for managing the trial, and that ruling was within its broad discretion. Saye argues that the trial court erred in granting Provident's motion in limine to exclude bad-faith evidence from the first phase of the trial. But the trial court is tasked with determining relevance, and that ruling was within its broad discretion. Saye also argues that the trial court erred in allowing Provident to violate the in limine ruling, but the rulings as to those claimed violations were likewise within the trial court's discretion. Finally, Saye argues that the trial court erred in admitting a recording of a telephone conversation between Saye and a claims representative. We agree with Saye that the recording did not fall within the business records exception to the hearsay rule and that admitting it was harmful error. We therefore reverse.

Many of the underlying facts are not in dispute. Saye is a laparoscopic surgeon who, throughout a lengthy career, performed

thousands of procedures with small, hand-held instruments. During the 1990s, Saye began experiencing pain and losing dexterity in his right hand due to a condition known as "Dupuytren's contracture." The condition worsened, and in 2001, at the age of 62, Saye stopped performing surgery and sought disability benefits.

At the time, Saye had three disability insurance policies with Provident. Each policy drew a distinction between disability resulting from injury and disability resulting from sickness. Under all three policies, Saye was entitled to monthly disability payments for life if he suffered a total disability caused by injury. If sickness caused the disability, however, his benefits extended only until he reached the age of 65 under two policies and for a total of forty-two months under the third.

Shortly before he turned 65, Saye received notification that his benefits would soon terminate pursuant to the "sickness" provision of his insurance policies. Saye objected, asserting that his disability resulted from an injury, rather than a sickness. Specifically, he claimed that his repetitive use of hand-held surgical devices over many years caused his condition.

When Provident denied his request for extended benefits, Saye filed suit, alleging that the insurer breached his insurance contracts, acted in bad faith by denying further coverage, and engaged in other tortious conduct. Saye eventually narrowed his claims against Provident to breach of contract and bad faith, with the breach of contract issue focused on whether he had suffered an injury entitling him to lifetime disability benefits or a sickness carrying limited coverage under the policies. Prior to trial, the trial court noted that if the jury found that Saye's condition was a sickness, his claim that Provident acted in bad faith by denying him lifetime benefits necessarily failed and did not require jury resolution. Concluding that the case could best be managed through bifurcation, the trial court decided that the parties would try the "simple contract case" regarding coverage first, then conduct a separate trial on bad faith if necessary.

Following a multi-day trial, the jury was asked to determine whether Saye's disability was caused by injury, sickness, or a combination of injury and sickness. The jury found that it resulted from sickness, thus ending his claim for lifetime disability payments. The trial court entered judgment for Provident and denied Saye's motion for new trial. This appeal followed.

1. Saye argues that the trial court erred in bifurcating the breach of contract and bad faith claims. We disagree. Under OCGA § 9-11-42 (b), a trial court, "in furtherance of convenience or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim." The court has broad discretion in managing a trial, and its decision to bifurcate issues or claims will

not be disturbed absent a manifest abuse of discretion. *Cantrell v. Northeast Ga. Med. Center*, 235 Ga. App. 365, 368 (1) (b) (508 SE2d 716) (1998).

No such abuse occurred here. The record shows that the trial court discussed bifurcation with the parties prior to trial, and Saye's counsel agreed that "all of the bad faith in the world . . . [made] no difference" if Saye was not entitled to benefits under the policies past the age of 65. Noting the difficulties of managing a potentially complex and convoluted case, as well as the prejudice Provident might suffer if bad faith evidence tainted the coverage question, the trial court concluded that the coverage issue should be tried first, followed, if necessary, by the bad faith claim.

On appeal, Saye suggests that OCGA § 33-4-6 precludes a court from bifurcating breach of contract and bad faith claims against an insurer because, in his view, the statute contemplates that such claims be brought in "a single action." Even if a single action is required, however, nothing in this case violates the requirement. Saye brought his claims against Provident in a single civil action, and they were resolved in that action, albeit through a bifurcated proceeding.

Moreover, the trial court was authorized to conclude, after extensive discussion with the parties, that bifurcation was appropriate in this case. Without dispute, coverage turned on whether Saye's debilitating condition arose from an injury or sickness. And the discrete coverage issue had to be resolved first because, as even Saye's counsel conceded, bad faith was irrelevant absent coverage. Given this logical break in proof, the possibility that bad faith evidence might taint the jury's consideration of coverage, and the trial court's need to manage a potentially complex case involving far reaching bad faith allegations, the trial court properly elected to bifurcate the claims. See *Cantrell*, supra.

2. Saye contends that the trial court erred in granting Provident's motion in limine to exclude all evidence of bad faith and claims handling from the coverage trial. In Georgia, however, evidence that is unrelated to the questions presented to the jury must be excluded as irrelevant. See OCGA § 24-2-1. A trial court is tasked with determining relevance, and its ruling will be upheld on appeal absent an abuse of discretion. See *Ahmed v. Clark*, 301 Ga. App. 426, 428-429 (688 SE2d 361) (2009); *Murphy v. Varner*, 292 Ga. App. 747, 749 (2) (666 SE2d 53) (2008).

The trial court informed the parties that, during the coverage trial phase, they would not be allowed to "go into anything else in front of the jury other than the coverage issue." It noted that the parties could give jurors context by describing how the disability claim and the litigation arose. But it found that issues regarding

Provident's handling of the claim and whether it abided by its claims manual related to bad faith, not coverage, and thus could not be addressed by either party during the coverage phase.

We find no error. Saye argues that the trial court wrongfully excluded critical claims-related information. The trial court, however, reasonably concluded that information involving bad faith and whether Provident acted appropriately with respect to claims administration exceeded the scope of the coverage issues. Accordingly, the trial court properly granted Provident's motion in limine. See *Murphy*, supra.

3. Saye also argues that the trial court erred in allowing Provident to violate this in limine ruling. As proof of the violation, Saye points to several situations in which Provident argued or submitted evidence that he did not claim his disability arose from injury until after his benefits were terminated under the sickness clause. He also cites to Provident's assertion during opening and closing statements that it fulfilled its obligations to him and paid all money owed under the insurance contracts.

Again, we find no error. Evidence relating to how Saye characterized his own condition was relevant to whether the condition arose from an injury or a sickness. And although Provident's assertion that Saye received payment under the policy potentially touched on claims handling, it also gave the jury context for how the disability claim and the litigation arose. The trial court thus concluded that its in limine ruling had not been violated. The trial court had discretion in this regard, and Saye has not shown any abuse. See *Lillard v. Owens*, 281 Ga. 619, 622 (2) (641 SE2d 511) (2007); *Yarborough v. State*, 183 Ga. App. 198, 200 (3) (358 SE2d 484) (1987).

4. The record shows, however, that the trial court erroneously admitted hearsay at trial. Provident offered into evidence a document that it had generated reflecting a telephone conversation between one of its claims representatives and Saye. According to the document, the representative asked Saye: "Is your disability the result of an accident or sickness?" and Saye responded, "sickness." Provident tendered the document as evidence of an inconsistent statement, asserting that Saye had previously testified that he never told Provident that his disability was a "sickness." The claims representative did not testify about the conversation or Saye's alleged statement, and Provident relied solely on the document to present evidence of the statement. Saye objected to the document's admission, characterizing it as hearsay and noting that the trial court had previously found it to be hearsay. But the trial court concluded, after a lengthy discussion with the parties, that it fell within the business records exception to the hearsay rule. It thus admitted the document over Saye's objection.

The business records exception extends to documents made in the regular course of business. See OCGA § 24-3-14 (b). To fall within the exception, however, a document must be "a memorandum or record of any act, transaction, occurrence, or event." Id. As explained by our Supreme Court, the contents of a conversation are "not an act, transaction, occurrence, or event." *Mitchell v. State*, 254 Ga. 353, 355 (5) (a) (329 SE2d 481) (1985). The document at issue here was nothing more than a record of a conversation between a Provident employee and Saye. The business records exception, therefore, does not apply. See id.; see also *Bailey v. Edmundson*, 280 Ga. 528, 533 (4) (630 SE2d 396) (2006) (business records exception does not apply to record of telephone conversation); *Griffin v. Bankston*, 302 Ga. App. 647, 653 (2) (691 SE2d 229) (2009) (telephone conversation memorialized in insurance file does not fall within business records exception).

On appeal, Provident argues that Saye did not sufficiently raise a hearsay objection below. Saye, however, clearly objected to admission of the document, characterizing its contents as hearsay, and the trial court ruled on the hearsay issue. Saye's objection was sufficient to preserve his hearsay argument on appeal. Compare *Holloway v. State*, 278 Ga. App. 709, 713 (4) (629 SE2d 447) (2006) ("To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived.").

Provident also contends that Saye acquiesced in the document's admission because he declined the trial court's offer to redact certain statements from it. The record shows that the parties and the court discussed the admissibility of the document at length, focusing on the "accident or sickness" question and response. Saye's counsel argued that the document was inadmissible, and the trial court eventually rejected that challenge. It then offered to redact various portions of the document that did not relate to the "accident or sickness" exchange. Saye's counsel turned down that offer, stating: "Just let it in. Just do the whole thing."

Counsel's statement must be viewed in context. He did not acquiesce in the admissibility of the document or the "accident or sickness" exchange. He clearly objected to that evidence. His objection having been overruled, he rejected only the trial court's offer to redact other portions of the document. To find acquiescence or induced error here misconstrues counsel's statement.

Finally, Provident argues that Saye's "sickness" comment was admissible as a prior inconsistent statement. But the comment is contained within a hearsay document and only comes into evidence if the document is, itself, admissible. See *Bailey*, supra. Accordingly, because the document does not constitute a business record admissible under OCGA § 24-3-14, the trial court erred in admitting it. See *Mitchell*, supra; *Bailey*, supra; *Griffin*, supra.

Having determined that the document was inadmissible, we now turn to whether the trial court's error in admitting it was harmful. Characterizing the error as harmless, Provident argues — and the dissent agrees — that Saye's alleged statement that his condition is a "sickness" was cumulative of other evidence properly admitted at trial. It is true that "[t]he admission of hearsay is harmless when it is cumulative of legally admissible evidence showing the same fact." *DeGolyer v. Green Tree Servicing*, 291 Ga. App. 444, 450 (5) (a) (662 SE2d 141) (2008).

But the alleged fact shown by the item of evidence at issue is that Saye described his own condition as resulting from a "sickness." There is no properly admitted evidence showing that alleged fact. There is evidence that Saye's treating physician characterized the condition as a disease and as not arising out of employment. Such evidence was certainly relevant. But contrary to the dissent, such evidence is very different from an admission by Saye himself. There is also evidence that, while benefits were being paid, Saye never described his condition as an "injury" and that he did not object when Provident first informed him that his claim fell under the "sickness" provision. Again, such evidence was relevant but very different from an affirmative admission by Saye himself that his condition is a sickness.

The ultimate issue at trial was whether Saye's disability resulted from a sickness or from an injury. The alleged fact shown by the item of evidence at issue here is that Saye himself admitted that his condition is a sickness. That distinction is essential to this harmless error analysis. The dissent obscures that distinction, particularly by its reference to "the critical issue."

Provident offered nonhearsay evidence that a sickness caused the disability. Saye, however, presented competing proof, including expert testimony, that his condition arose from injury. The evidence was not overwhelming either way, and the jury was required to resolve the factual dispute. In the midst of this competing proof, the jury was told through inadmissible hearsay that Saye, who is himself a medical doctor, had referred to his own condition as a sickness. Given that this hearsay evidence went directly to the ultimate issue before the jury, we cannot conclude that its erroneous admission was harmless. See *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 839 (2) (678 SE2d 489) (2009). Accordingly, we reverse.

*Judgment reversed. Smith, P. J., Barnes, P. J., Phipps, P. J., and Mikell, J., concur. Andrews and Dillard, JJ., dissent.*

ANDREWS, Judge, dissenting.

This voluminous record, culminating in the trial court's entry of judgment on the jury's verdict in favor of defendant Provident,

contains substantial evidence that Saye's condition was the genetically derived sickness known as Dupuytren's contracture, and not an occupationally induced injury. In light of this record, any error in the erroneous admission of one document containing Saye's admission that he suffered from a "sickness" was cumulative and therefore harmless. Even if we were to consider the issue to be Saye's admission concerning his condition rather than the condition itself, moreover, this was cumulative given other evidence that throughout the several years during which he collected over $16,000 a month in disability payments, he and Provident repeatedly agreed that his condition was indeed a "sickness." I therefore respectfully dissent to Division 4 of the majority opinion and to its reversal of the trial court's entry of judgment on the jury's verdict.

As the majority itself states, the issue before this jury was a simple one: "whether Saye's disability was caused by injury, sickness, or a combination of injury and sickness." (p. 75). This jury was shown detailed evidence that (a) Dupuytren's contracture is a genetic condition (Saye's mother also suffered from it); (b) that it predominantly affects white men of Scandinavian or Northern European descent (like Saye); (c) it typically develops in the fifth decade of life (Saye was 53 or 54 years old when he first experienced symptoms); and (d) it affects either or both hands, without regard to which is dominant (Saye's case began in his right hand but soon developed in his left as well). In short, there was abundant evidence before this jury, *apart from any statement or admission Saye may have made to this effect,* to support its determination that Saye's disability was caused by a hereditary disease rather than a job injury.

In light of this extensive evidence that Saye suffered a sickness rather than an injury, a one-word confirmation of this conclusion in response to a telephone representative's question was cumulative, and any error arising from its admission harmless. *Smith v. Stacey,* 281 Ga. 601, 601-602 (642 SE2d 28) (2007) (any error arising from admission of hearsay evidence was harmless because "cumulative of legally admissible evidence showing the same fact"). The majority's assertion to the contrary — that the fact at issue here is whether "Saye himself admitted that his condition is a sickness" (p. 79) — wrongly conflates a lawyer's dispute over the admissibility of a single piece of evidence into the ultimate factual issue properly before this jury.

Finally, and even if we were to accept the majority's characterization of Saye's admission as the critical issue, the record shows that throughout the years during which he collected over $16,000 a month in disability payments, either Saye or his physician denied that his condition was job-related, characterized it as the "disease" known as "Dupuytren's contracture" and never objected to Provi-

dent's characterization of it in the same way. Only on June 9, 2004, five days after he was notified that he had received his last check, did Saye claim for the first time that his condition was caused not by sickness, but by "repetitive hand motion, vibration, and muscle strain experienced during his career as a surgeon."

Because of any new trial's risk and cost, our law has long insisted that a party seeking a new trial "must show harm as well as error to prevail on appeal." *Great Western Bank v. Davis*, 203 Ga. App. 473, 475 (3) (416 SE2d 899) (1992) (no reversible error where contents of document put into evidence through testimony but document not allowed). There is no reasonable justification for the majority's voiding of a jury's verdict after a trial resulting in more than a thousand pages of transcript alone. I therefore dissent.

I am authorized to state that Judge Dillard joins in this dissent.

DECIDED JUNE 24, 2011 —
RECONSIDERATION DENIED JULY 18, 2011 —

*Harris, Penn & Lowry, Jeffrey R. Harris, Darren W. Penn, Stephen G. Lowry, Jed D. Manton*, for appellant.

*Smith, Moore & Leatherwood, H. Sanders Carter, Jr., Nikole M. Crow*, for appellee.