## A11A1046. DENDY v. WELLS et al.
### (718 SE2d 140)

BARNES, Presiding Judge.

Duncan Wells, M.D., performed hip replacement surgery on Frances Dendy, and during the procedure her sciatic nerve became

---

damaged. Dendy sued Wells and his practice, Duncan Wells, M.D., P.C. d/b/a Atlas Orthopedics for medical malpractice, alleging that the defendant violated the applicable standard of care by clamping a retractor on the plaintiff's sciatic nerve during the surgery. A jury returned a defense verdict, and the trial court denied the plaintiff's motion for new trial. The plaintiff appeals, arguing that the defendant repeatedly violated a motion in limine which prohibited the parties from using the personal practices of expert witnesses to establish the applicable standard of care. For the reasons that follow, we affirm.

In 2009, the Supreme Court of Georgia in *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667, 669-672 (1) (681 SE2d 152) (2009), changed a long-standing rule prohibiting a medical malpractice expert from testifying about his personal practices. The court held that "evidence regarding an expert witness' personal practices, unless subject to exclusion on other evidentiary grounds, is admissible both as substantive evidence and to impeach the expert's opinion regarding the applicable standard of care." Id. at 669 (1). It concluded that the plaintiff in that case should have been allowed to cross-examine an expert witness about his personal practices, which differed from the standard of care he described. Id. at 669-672 (1). Applying *Condra*, this court subsequently held in *Griffin v. Bankston*, 302 Ga. App. 647, 651-652 (1) (b) (691 SE2d 229) (2009), that a plaintiff could cross-examine a fact witness about his personal practices to refute the witness's testimony that such practices would not have made a difference to the outcome in that case.

In this case, the plaintiff argues that *Condra* and *Griffin* "did nothing to change Georgia's long-standing prohibition against admitting personal practices testimony on direct examination," but only applied to cross-examination of an expert whose personal practices differed from the standard of care he espoused. Such testimony, argues the plaintiff, does not illuminate the standard of care, improperly leads the jury to believe that since the expert follows certain practices, those practices must fall within the proper standard of care, and "does nothing to illustrate a physician's credibility."

Before trial, the defendant filed a written motion in limine, seeking to exclude

> **[e]vidence that the personal professional practices of Dr. Wells, defense expert(s), plaintiff's expert(s), or treating physicians that differ from Dr. Wells' or [his expert witness's] practice conclusively establishes [sic] the standard of care.** Georgia courts have consistently held that eliciting testimony about the course

of conduct a particular physician *personally* would have followed in treating a patient is not a proper means to establish the general standard of care. The standard of care is a general standard, and is not defined in terms of what a particular physician prefers to do under the circumstances. A mere difference in views between physicians as to the medical judgment exercised by the defendant physicians is not proof of medical malpractice when the procedures preferred by each, or the judgment exercised, are all acceptable and customary methods of treatment. A mere difference in the personal practices of medical experts does not by itself prove a breach in the standard of care by the defendant physicians. *Condra v. Atlanta Orthopaedic [Group*, 285 Ga. 667].

The defendant also noted that the court in *Condra* advised that

any potential confusion created by the admission of such evidence may be remedied through the use of careful jury instructions . . . [which] define the legal meaning of standard of care; enunciate the principle that a mere difference in views between physicians does not by itself prove malpractice, . . . and clarify concepts such as burden of proof and credibility of witnesses.

Id. at 672 (1).

The plaintiff had no objection to the motion, agreeing with the defendant's statement that "evidence of personal practices of the various orthopedic surgeons does not establish standard of care, although they can be used to assess the credibility of experts."

In his opening statement, the defendant told the jury that his expert witness was going to testify "what the standard of care is for an orthopedic surgeon, . . . what the appropriate technique is and what the technique is that he uses" during hip replacement surgery. The expert would also testify that he and the defendant used the same technique, which they both were taught at Harvard Medical School. Before testimony began the next day, the plaintiff expressed her concerns about the defendant's statements that his expert would testify that the defendant and the expert performed surgery the same way and sought confirmation that the expert could not testify that "because he does it one way, that establishes the standard of care, or because he and Dr. Wells do it the same way. You can't use personal preferences to establish standard of care." The defendant responded that he would not argue that "because this is the way he does it, this is the standard of care," but added that the Supreme

Court has held that evidence of personal practices was admissible and relevant. The trial court responded that the proper way to establish the standard of care was for an expert to testify that "this is how this procedure should be done," and then the expert could testify, "I happen to do it that way."

After the plaintiff presented her evidence, the defendant called his expert witness, who is an orthopedic surgeon specializing in total hip and knee joint replacements. At the beginning of the expert's testimony, the defendant asked if he understood the standard of care to mean, for purposes of the lawsuit, "what a surgeon is required to do to exhibit the skill and degree of care as employed by professionals generally under conditions and like surrounding circumstances." The expert responded that he understood the definition and understood that the standard of care was national, not local. The expert then opined that the standard of care applicable to this type of surgery did not require the surgeon to see or touch the sciatic nerve before placing a retractor or pin to hold the soft tissue out of the way. Damage to the sciatic nerve is already a known complication from hip replacement surgery, and dissecting the tissue around the nerve to see or touch it would create an additional risk of injury. The witness testified that he had been taught not to dissect tissue in order to see or feel the sciatic nerve, and he also taught residents not to "mess with it." Instead, the standard of care was to retract the group of muscles in front of the nerve, visualize the ischium, and place the pin or retractors in place to hold the soft tissue out of the way, thus reducing the potential for damaging the nerve. In this case, he opined, the defendant did not deviate from that standard of care.

The defendant also asked the expert about his personal hip replacement surgery practices, such as whether he used the same approach the defendant did when replacing a hip, whether he placed his retractor in the same place the defendant put his pin, and whether he visualized or touched the sciatic nerve before placing his retractor. The expert confirmed that he used the same approach as the defendant.

In closing, the defendant argued that the expert testified he might "carefully" identify the general location of the sciatic nerve when working with a brand-new doctor, but otherwise, the expert said, "I leave it alone. I stay away from it. That's the way I've done it ever since I left Harvard, even before I went to Harvard." The defendant in closing also recalled that the expert "came in and said, I am just telling you that this is my training. This is the way I do it. I have never, never attempted to palpate or visualize the sciatic nerve when I am doing [this surgery]." Finally, the defendant argued that both the defendant and his expert said, "This is the way I've always done it, and the way I was trained to do it."

After the jury returned a defense verdict, the plaintiff moved for a new trial, arguing that the defendant violated the granted motion in limine by establishing the applicable standard of care through his expert's personal practices. She also argued that the defendant "never asked [his expert] to explain what the standard of care was with respect to the issues in this case." The trial court disagreed and denied the motion.

The plaintiff argues on appeal that the trial court erred in denying her motion for a new trial, to which she was entitled because of the defendant's "numerous and intentional violations" of the granted motion in limine, which was intended to exclude evidence that the expert's personal practices established the standard of care. Because the evidence was inadmissible and prejudicial, plaintiff asserts, she is entitled to a new trial.

But reviewing the transcript in its entirety reveals that neither the defendant nor his expert attempted to establish the applicable standard of care through their personal practices. The defendant established the standard of care through his expert's testimony that a surgeon performing a total hip replacement was not required to visualize or touch the sciatic nerve before placing a retractor or pin to hold the soft tissue out of the way. The defense expert also testified that, in his opinion, the defendant's actions during the plaintiff's surgery did not deviate from the applicable standard of care.

As recommended by the Supreme Court in *Condra*, the trial court in this case instructed the jury about the legal meaning of "standard of care," the principle that a defendant does not prove malpractice by introducing a doctor's mere difference of opinion, and the concepts of burden of proof and credibility of witnesses.

The issue in *Condra* was whether a plaintiff could ask a defense witness about the fact that his personal practices *differed* from the standard of care he described. 285 Ga. at 672 (1). The expert witness in that case testified that the defendant did not violate the standard of care by failing to monitor the plaintiff's blood count while she was taking a medication that caused her to develop aplastic anemia, but had testified in deposition that he personally monitored patients taking that medication. Id. at 668. The plaintiff was not allowed to cross-examine the expert regarding this discrepancy. Id. In reversing, the Supreme Court explained:

> Neither the jury's ability to perform its role as arbiter of the expert's credibility, nor the party's right to a "thorough and sifting cross-examination," OCGA § 24-9-64, is well served by a prohibition on cross-examination of the opposing party's expert regarding personal practices that differ from the standard of care as asserted by that expert.

Id. at 671 (1). The court further noted that the potential for confusing the jury "by conflating the standard of care with an expert's personal protocols [did] . . . not as a general rule outweigh the usefulness of such information in evaluating an expert's credibility." Id. at 672 (1).

In *Griffin*, this court applied *Condra* and reversed a defense verdict, remanding a dental malpractice case for a new trial because the plaintiff was not allowed to cross-examine a fact witness about his personal practices, which differed from the defendant's practices. 302 Ga. App. at 649 (1). The witness testified that the defendant's failure to administer prophylactic penicillin would not have prevented the massive infection that occurred after the defendant extracted two of the plaintiff's wisdom teeth, but had testified in deposition that his personal practice was to administer penicillin as a preventive measure under similar circumstances. Id. We held that evidence that the witness "routinely took the same precaution to guard against infection that he now claimed would not have made a difference in the present case arguably called into question the credibility of such a claim." Id. at 652 (1) (b). Excluding the evidence about the expert's personal practices "undermined the jury's ability to fully evaluate [the witness's] credibility and deprived [the plaintiff] of her substantial right to a thorough and sifting cross-examination." Id.

While the factual situations in *Condra* and *Griffin* involved the cross-examination of an expert whose personal practices differed from the standard of care he espoused, we see no logical distinction between allowing an expert to be cross-examined about whether his personal practices *differed* from the defendant's and allowing the expert to testify on direct examination about whether his personal practices *mirrored* the defendant's, and comported with the previously-established standard of care. Contrary to the plaintiff's assertions, both scenarios assist the jury in determining the expert's credibility.

We agree that the defendant may not establish the applicable standard of care with evidence of an expert witness's personal practices, or evidence about the course of conduct the expert would have followed under similar circumstances. In this case, however, the expert testified first that the generally accepted standard of care for physicians nationally was to avoid touching or looking for the nerve, and then testified that he followed that standard, as did the defendant.

Accordingly, we find no error in the trial court's denial of the plaintiff's motion for a new trial.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED NOVEMBER 1, 2011.

*Glenn A. Loewenthal, Sherard K. Dixon,* for appellant.
*Peters & Monyak, Jonathan C. Peters, Sharon L. Neal,* for appellees.