A08A1712. AMERICAN TELECONFERENCING SERVICES, LTD. v. NETWORK BILLING SYSTEMS, LLC.

(668 SE2d 259)

BLACKBURN, Presiding Judge.

In this breach of contract action brought by Network Billing Systems, LLC (Network) against American Teleconferencing Services, Ltd. (ATS), ATS appeals the trial court's order granting in part and denying in part the parties' respective motions for summary judgment. ATS maintains that the court should have granted its motion for summary judgment in toto (and should have denied Network's corresponding summary judgment motion in toto); specifically, ATS argues that since the court determined that the minimum monthly commitment provision in the parties' contract

---

[9] Id.

was unenforceable, and since that was the only contract provision allegedly breached, the court should have entered summary judgment in its favor on all counts. We hold (i) that the court erred in ruling the minimum monthly commitment provision unenforceable and (ii) that the breach of contract count therefore survives on that claim, but (iii) that the court erred in denying summary judgment on the other counts. Accordingly, we affirm in part and reverse in part.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a denial of summary judgment. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

The material facts are undisputed. On August 1, 2003, Network (a reseller of teleconferencing services) contracted with ATS's predecessor for a period of 12 months to provide teleconferencing circuits and related services to that predecessor and its customers at specified rates. The predecessor agreed that (i) the term of the agreement would automatically extend another 12 months if the predecessor did not give notice of nonrenewal at least 30 days prior to the expiration of the first term, and (ii) the predecessor committed to a minimum monthly usage volume of $50,000, with the proviso that if its usage charges for a particular month were less than $50,000, it would "be billed an amount equal to the shortfall amount in addition to the actual monthly usage charges so that the total usage related charges" would equal $50,000. Finally, the parties agreed that at the end of each 12-month period, Network would credit the predecessor's account "equal to any shortfall amounts billed over the previous [12] months if the average actual usage amounts billed over that period exceeded" $50,000.

From August 2003 through March 2004, the predecessor used and paid for Network's circuits and services in monthly amounts ranging from $75,000 to $100,000. On April 1, 2004, ATS assumed the liabilities of its predecessor under the contract.[2] From April through July 2004, ATS used and paid for Network's circuits and services in monthly amounts exceeding $85,000. ATS did not send any notice terminating the agreement, causing the agreement to renew for another 12-month period beginning on August 1, 2004. In August 2004, ATS used and paid for Network's circuits and services in an amount exceeding $70,000.

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] Although ATS disputes this fact generally, it posited that for purposes of summary judgment, the trial court could assume that ATS assumed its predecessor's liabilities as set forth in the contract.

On October 4, 2004, ATS notified Network that ATS no longer intended to use Network's circuits and services and therefore requested that Network disconnect its circuits from ATS's facility. Network complied but reminded ATS that it would be liable for the minimum monthly volume commitment of $50,000 through the end of the second term of the agreement. ATS disputed this. From October 2004 through July 2005, Network billed ATS for the $50,000 monthly minimum (plus late fees and related charges), but ATS paid only for its actual usage charges, which were minimal. Per Network's final invoice, $602,120.30 remained due on the account as of August 2005, all of which was related to enforcement of the minimum monthly volume commitment of $50,000.

Network sued ATS[3] for the unpaid amount, asserting six causes of action: breach of contract, quantum meruit, open account, unjust enrichment, attorney fees, and reformation (seeking to reform the asset purchase agreement to expressly reflect that ATS had assumed its predecessor's liabilities under the Network contract). Arguing inter alia that the minimum monthly volume commitment was unenforceable as a penalty and that Network could show no actual damages, ATS moved for summary judgment on all claims. Network also moved for summary judgment on all claims, arguing that breach of contract was established as a matter of law. The court granted ATS's motion in part, holding that the minimum monthly volume commitment provision was unenforceable as a penalty; the court nevertheless also granted Network's motion in part, holding that ATS was liable as a matter of law for breaching other contract provisions. The motions were otherwise denied. ATS appeals.

1. ATS first argues that the only breach of contract shown or even alleged by Network was ATS's failure to pay the minimum monthly volume commitment, as Network readily conceded that ATS paid all other charges billed or due under the agreement. Accordingly, ATS contends that since the trial court found the minimum monthly volume commitment provision unenforceable, the court erred in denying ATS's motion for summary judgment on the breach of contract claim and in partially granting Network's motion by finding that ATS was liable as a matter of law for breaching the contract.

The linchpin to ATS's argument is the trial court's holding that the minimum monthly commitment provision was unenforceable as a penalty. As stated by ATS in its appellate reply brief, "the trial court's penalty ruling is incorporated within and critical to ATS's

[3] Network also sued ATS's parent company, which successfully moved for summary judgment on the ground it was the incorrect party. That order is not contested on appeal.

first two enumerations of error. ATS's first two enumerations of error hinge upon the fact that the trial court had invalidated the [monthly minimum] provision that was the sole basis for [Network's] damages claim. . . ." (Punctuation omitted.) Thus, we cannot consider ATS's enumerations of error without first determining the correctness of the trial court's ruling that the minimum monthly commitment provision was unenforceable, regardless of whether Network has procedurally challenged that ruling on appeal.[4]

"[D]etermining whether the contract clause constitutes . . . an unenforceable penalty is a question of law for the court." (Punctuation omitted.) *Allied Informatics v. Yeruva*.[5] Therefore, we address the issue de novo.

It is first important to address what the minimum monthly volume commitment contract provision is not. It is not a liquidated damages provision. It does not specify what damages must be paid or penalties incurred for an early termination of the agreement. Rather, the provision simply specifies that ATS is required to buy a certain minimum volume of service, i.e., $50,000, from Network on a monthly basis. If ATS does not buy that level of volume, then ATS agrees to be liable for the shortfall between its actual usage charges and the $50,000 level. As is uncontested in the record, the obvious benefit received by ATS in exchange for agreeing to this minimum was Network's agreeing to charge the lower rates specified in the contract for the services it gave ATS under the contract. Network was able to commit to certain volumes with its own supplier and thus to negotiate bulk rates based on a guaranteed minimum, which bulk rates would be jeopardized when those volumes were not met. Moreover, knowing that ATS was agreeing to a minimum usage amount persuaded Network to install custom circuits in ATS's facility.

The bottom line is that ATS's obligation to pay at least $50,000 a month was not triggered by a premature termination of the contract. It was not a penalty that became effective if ATS desired or acted to repudiate the contract. Rather, it was simply a negotiated minimum usage commitment that allowed ATS the benefit of negotiating lower rates and that justified certain capital expenditures on the part of Network.

---

[4] Although Network could have challenged that ruling through a cross-appeal at this time, the law is well established that it was not required to do so. See *Perrett v. Sumner*, 286 Ga. App. 379, 380 (1) (649 SE2d 545) (2007) ("[a] party . . . may wait until final judgment to appeal an order granting partial summary judgment").

[5] *Allied Informatics v. Yeruva*, 251 Ga. App. 404, 405 (1) (554 SE2d 550) (2001).

*Duke v. Williams*[6] involved a similar contract provision that required a client to pay a minimum retainer fee of $213,200 to a consultant providing ongoing services under a consulting contract, which fee was to be paid in $2,000 installments on a weekly basis over two years. Regardless of the time actually spent by the consultant to perform its services, the minimum fee had to be paid, with the possibility of paying the consultant more than twice that amount if the contract continued for five years. Id. Within weeks of the contract's execution, the client terminated the consultant's services and refused to pay the minimum fee, claiming it was an unenforceable penalty.

We held that "these provisions do not call for either a penalty or liquidated damages." *Duke*, supra, 197 Ga. App. at 838 (2). We explained:

> A liquidated damages analysis is inapplicable to the case at hand since the agreement does not purport to be a stipulated sum for damages for a breach. If not liquidated damages, then what? As a reading of the contract suggests, the disputed provision simply describes the price to be paid for [the consultant's] services. *As the provisions in the contract at hand do not in any fashion connect [the client's] obligation to pay the minimum fee with any breach of the contract, they cannot be a liquidated damages provision.* Therefore, the tripartite test set forth in *Southeastern Land Fund v. Real Estate World*[7] has no application to this case.

(Citation and punctuation omitted; emphasis supplied.) Id.

Similarly, the minimum monthly volume provision here does not in any way connect ATS's obligation to pay the minimum monthly fee with any breach of the contract; accordingly, it cannot be a liquidated damages or penalty provision. The trial court erred in holding that this provision was an unenforceable penalty. Because this provision is enforceable, ATS's arguments that were contingent on its being unenforceable fail.

2. ATS's second enumeration is that insofar as Network's breach of contract claim concerned alleged breaches of provisions other than the minimum monthly commitment, ATS was entitled to summary judgment on the ground that no competent evidence showed damages from those alleged breaches. However, the evidence undisputably shows that the only contract provision that was breached was the minimum monthly commitment provision, since Network freely

---

[6] *Duke v. Williams*, 197 Ga. App. 836, 837 (2) (399 SE2d 544) (1990).
[7] *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

conceded that all other amounts billed under the contract were paid. Network's intimations that the renewal provision was somehow breached lacks substance, as there is no dispute that the contract was renewed by its own terms. ATS's decision to cease using Network's services breached no renewal provision. Rather, ATS simply remained obligated to pay the shortfall arising from its decision not to use at least $50,000 in services each month. Accordingly, no other contract provisions are at issue.

3. ATS's final enumeration is that the trial court erred in failing to grant it summary judgment on Network's other claims. We agree in large part.

It is true that a party may allege alternative theories of recovery in its pleadings. See OCGA § 9-11-8 (e) (2). However, on summary judgment, the undisputed material facts may lead to the determination that those alternative forms of relief are not available. Such is the case here.

(a) *Action on open account.* Network sued ATS for a claim under the theory of "open account" based on its monthly billings reflecting the $50,000 minimum. "[W]hen there exists a bona fide dispute as to the amount due or the receipt of goods, open account is the wrong theory of recovery, because such simplified action is for cases where a party seeks to recover what he justly and equitably is entitled to without regard to any special agreement as to payment." *Imex Intl. v. Wires Engineering.*[8] See *Lager's, LLC v. Palace Laundry, Inc.*[9] Here, ATS has challenged Network's billings, "which takes the case outside the simplified parameters of an action on open account. [Network's] claim must proceed as a breach of contract action." *Schluter v. Perrie, Buker, Stagg & Jones, P.C.*[10] Accordingly, the trial court erred in failing to grant ATS summary judgment on Network's "open account" claim.

(b) *Quantum meruit and unjust enrichment.* Network's claims for quantum meruit and unjust enrichment, which seek nothing more than to recover the monies that were due under the minimum monthly commitment provision, fail for the simple reason that recovery under neither quantum meruit nor unjust enrichment is authorized where, as here, the claims are based on an express contract. *Kwickie/Flash Foods v. Lakeside Petroleum.*[11] See *Donchi,*

---

[8] *Imex Intl. v. Wires Engineering*, 261 Ga. App. 329, 332 (1) (a) (583 SE2d 117) (2003).

[9] *Lager's, LLC v. Palace Laundry, Inc.*, 247 Ga. App. 260, 264 (2) (543 SE2d 773) (2000).

[10] *Schluter v. Perrie, Buker, Stagg & Jones, P.C.*, 230 Ga. App. 776, 777 (1) (498 SE2d 543) (1998) (physical precedent only).

[11] *Kwickie/Flash Foods v. Lakeside Petroleum*, 246 Ga. App. 729, 730 (541 SE2d 699) (2000).

*Inc. v. Robdol, LLC*[12] ("[a]n unjust enrichment theory does not lie where there is an express contract") (punctuation omitted); *Blueshift, Inc. v. Advanced Computing Technologies*[13] ("recovery in quantum meruit is not authorized when, as here, the claim is based on an express contract") (punctuation omitted).

(c) *Reformation of contract.* Network seeks to amend the asset purchase agreement between ATS and its predecessor so as to expressly recognize that ATS assumed the obligations of the Network contract when it purchased the assets of its predecessor. However, only parties and their privies have standing to seek reformation of a contract. *Ins. Agency of Glynn County v. Atlanta Cas. Co.*[14] Network is not even a third-party beneficiary to the contract, as the contract expressly disclaimed any third-party beneficiary rights. See *Monroe v. Bd. of Regents of the Univ. System of Ga.*[15] Accordingly, this claim must also fail.

(d) *Attorney fees.* ATS does not challenge the court's ruling that allowed the claim for attorney fees under OCGA §§ 13-6-11 and 9-15-14 to proceed, and we therefore do not address same.

In summary, we reverse that portion of the court's summary judgment order that held that the minimum monthly volume commitment provision was unenforceable. We further reverse that order to the extent it held that evidence showed that other provisions of the contract were breached and that ATS was liable as a matter of law for those breaches. We also reverse that portion of the order denying ATS summary judgment on Network's claims for open account, quantum meruit, unjust enrichment, and reformation. The order is otherwise affirmed.

*Judgment affirmed in part and reversed in part. Barnes, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 15, 2008 —
RECONSIDERATION DENIED OCTOBER 2, 2008 — ▉▉▉▉▉

*Kilpatrick Stockton, Curtis A. Garrett, Jr., James F. Bogan III,* for appellant.

---

[12] *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 167 (4) (640 SE2d 719) (2007).

[13] *Blueshift, Inc. v. Advanced Computing Technologies*, 273 Ga. App. 802, 804 (1) (616 SE2d 816) (2005).

[14] *Ins. Agency of Glynn County v. Atlanta Cas. Co.*, 255 Ga. App. 323, 324 (1) (565 SE2d 547) (2002).

[15] *Monroe v. Bd. of Regents of the Univ. System of Ga.*, 268 Ga. App. 659, 666 (4) (602 SE2d 219) (2004).

*Adorno & Yoss, Jeffrey W. Melcher*, for appellee.