**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 24, 2018**

# In the Court of Appeals of Georgia

A18A1418. TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA v. SRM GROUP, INC.

Rᴀʏ, Judge.

Travelers Property Casualty Company of America ("Travelers") filed suit against SRM Group, Inc. ("SRM") seeking to recover unpaid premiums due under a workers compensation insurance policy. In response, SRM asserted counterclaims against Travelers for breach of contract, breach of duty of good faith and fair dealing, and attorney fees based on Travelers' audit of SRM's employee risk classifications and subsequent refusal to reclassify those employees, which resulted in a substantial retroactive increase in the premium. Following a four-day trial, the jury awarded $174,858.00 in damages to Travelers based on SRM's failure to pay some of the alleged increased premium due under the policy. However, the jury found that

Travelers had also breached the contract and acted in bad faith in conducting the audit and in subsequently refusing to reclassify certain SRM employees. Accordingly, the jury awarded damages to SRM in the aggregate sum of $174,858.00, which consisted of $57,858.00 for the breach and $117,000.00 in bad faith attorney fees. Travelers filed a motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. Following a hearing, the trial court denied the motions.

Travelers appeals, contending that the trial court erred in denying the motion for judgment notwithstanding the verdict on SRM's counterclaims for breach of contract and bad faith attorney fees, or in denying the motion for new trial, based on (i) the inconsistency of the verdict; (ii) the trial court's denial of certain motions in limine; and (iii) the trial court's refusal to give a requested jury instruction on open account interest pursuant to OCGA § 7-4-16. For the following reasons, we affirm in part and reverse in part.

The record shows that Travelers filed a lawsuit against SRM seeking to recover damages in the amount of $479,017.54[1] arising out of SRM's failure to pay the increased premium due under a workers compensation policy between the parties.

---

[1] This sum included $279,157.00 for the policy period of 05/12/12 to 05/12/13 and $199,860.54 for the renewed policy period of 05/12/13 to 01/01/14. Travelers cancelled the policy for nonpayment of the premium on January 1, 2014.

2

According to SRM, the premium was twenty times the price that Travelers had estimated it would be and the increase was the result of an improper classification of certain SRM employees. Consequently, SRM asserted counterclaims against Travelers for breach of contract and breach of the covenant of good faith and fair dealing based on the manner in which Travelers conducted an audit of SRM's employee classifications and Travelers' subsequent refusal to reclassify those employees. SRM also sought bad faith attorney fees pursuant to OCGA § 13-6-11 as a result of the breach. Specifically, SRM's counterclaims for breach allege that Travelers wrongfully assigned certain job classifications to some of SRM's employees and then refused to reclassify these employees, resulting in an unwarranted increase in the premium owed by SRM.

The terms of the insurance policy provided that the initial amount of the premium set forth in the policy was only an estimate and that Travelers reserved the right to retroactively adjust the premium amount during the policy period after an audit of SRM's records. Accordingly, in 2013, Travelers conducted such an audit, and it issued a premium adjustment notice to SRM indicating an additional premium due for the policy period from 05/12/12 to 05/12/13 in the amount of $279,157.00. SRM disputed the retroactive increase in the premium, and the parties were unable to

resolve the dispute. On January 1, 2014, Travelers cancelled the policy for SRM's nonpayment of the increased premium. Travelers then issued a billing statement to SRM for the $279,157.00, as well as for the additional amount of $199,860.54 in unpaid premium for the portion of the renewed policy period from 05/12/13 to 01/01/14.

During the policy period but before the 2013 audit, SRM was awarded a contract by the U.S. Department of Homeland Security for the operation and maintenance of dormitory facilities at the Federal Law Enforcement Training Facility ("FLETC") in Brunswick, Georgia. As a result of its 2013 audit, Travelers classified SRM's employees that worked at FLETC as "Code 9101-School" employees because FLETC was a school or training facility for state and federal law enforcement personnel. However, Suresh Prabhu, who was SRM's chief executive officer and sole owner, and John Oxendine, a former insurance commissioner for the State of Georgia who was qualified as an expert in employee classification for insurance purposes, both testified at trial that the FLETC workers should have been classified as "9052-Hotel" employees, which carried a significantly lower premium cost than the "9101-School" employee classification.

Travelers' premium increase was also predicated in part on Travelers' risk classification of certain logistic specialists employed by SRM who kept track of inventory and military equipment at various National Guard facilities. As a result of its 2013 audit, Travelers classified these logistic specialists as "8292-Warehouse/Storage" employees. However, both Prabhu and Oxendine testified at trial that the logistic specialists should have been classified as "8810-Clerical" employees, which carried a lower premium cost to SRM than the "8292-Warehouse/Storage" employee risk classification.

Other than the issue of whether SRM had breached the contract by failing to pay *any* portion of the retroactive premium increase, the primary focus of the trial was Travelers' handling of the 2013 audit and Travelers' subsequent refusal to reclassify the above-referenced employees. To that end, Travelers' auditor, Larry Grasso, testified that he initiated the employee classification process by reviewing the job descriptions as they appeared in SRM's payroll documents that were generated by an outside payroll company and by referring to insurance trade publications. He testified that he finalized the employee classification process after having one short conversation and several follow-up emails with an administrative assistant who worked in SRM's head office. Although Grasso testified that an employee's risk

5

classification depended on his or her particular job requirements and work environment, he acknowledged that he never visited SRM's work sites or spoke with anyone at SRM regarding its employees' job requirements or work environment. Rather, Grasso claimed that work site visits and employee interviews were not necessary because, under the normal auditing process, he would get the required information from the owner of the business. Notably, however, Grasso testified that he decided not to contact Prabhu in this case. Furthermore, Grasso's testimony seemed to indicate that he harbored a certain level of indignation toward Prabhu because Prabhu did not meet with him personally during the auditing process.

At trial, Prabhu testified in great detail as to nature of the work and the tasks that were performed by its FLETC workers and logistic specialists, which was consistent with the "hotel" and clerical" employee classifications, respectively. Prabhu further testified that he provided this information to Travelers, that Travelers apparently would not consider this information, and that Travelers simply ignored him both during and after the audit resulting in the retroactive premium increase.

Although SRM acknowledged at trial that it owed at least some of the additional amount of the premium, SRM admitted that it continued to pay only the amounts that were established before the retroactive premium increase.

6

As a result of SRM's nonpayment of the increased portion of the premium, Travelers cancelled the policy. At trial, Prabhu testified that the cancellation of the policy caused a hardship on SRM's efforts to find subsequent insurance, which he needed to continue to maintain his business. Prabhu also testified that the inability to resolve the employee classification dispute with Travelers and the resulting litigation forced him to devote all of his time to the litigation instead of attending to SRM's business concerns, which has had a negative impact on SRM's business.

After considering all of the evidence, the jury returned verdicts for both Travelers and SRM on their respective claims, awarding damages to each party which, in effect, resulted in no monetary recovery for either party.

1. Travelers contends that the trial court erred in denying Travelers' motion for judgment notwithstanding the verdict entered in favor of SRM on its counterclaim for breach in the amount of $57,858.00, arguing that SRM failed to adduce any evidence of its damages and that the amount of nominal damages awarded was excessive. We discern no basis for reversal.

On appeal from the denial of a motion for judgment notwithstanding the verdict, "we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the

7

jury's verdict." (Citation omitted.) *Park v. Nichols*, 307 Ga. App. 841, 845 (2) (706 SE2d 698) (2011). Furthermore, a motion for judgment notwithstanding the verdict should not be granted "unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict." (Citation omitted.) *Prime Home Properties v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 702 (3) (660 SE2d 44) (2008). "[A] verdict will not be set aside where the evidence construed in favor of the verdict supports it, however slightly." (Citation omitted.) *Page v. Will McKnight Const., Inc.*, 282 Ga. App. 571, 572 (1) (639 SE2d 381) (2006).

(a) Travelers first argues that it was entitled to judgment notwithstanding the verdict on SRM's counterclaim for breach of contract because SRM failed to establish the amount of its nominal damages. Travelers' argument lacks merit.

> A plaintiff's right to recover nominal damages depends *only* upon whether the defendant's liability has been established. Under the Civil Practice Act it is not necessary to pray specifically for general or nominal damages in order to present a question for the jury as to nominal damages. All that is now necessary is that the plaintiff raise the issue *during the trial* so that it may be presented to the jury.

8

(Citations and punctuation omitted; emphasis in original.) *Bishop v. Int'l Paper Co.*, 174 Ga. App. 863, 864 (1) (332 SE2d 12) (1985). Furthermore, in order to recover nominal damages, "[a] showing of actual damages [is] simply not required." *McEntyre v. Edwards*, 261 Ga. App. 843, 845-846 (2) (583 SE2d 889) (2003). Lastly, OCGA § 13-6-6 provides that "[i]n every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action."

Here, although SRM did not introduce any evidence of its damages in terms of a specific monetary amount, it did provide some evidence that SRM suffered harm as a result Travelers' actions. SRM faced difficulties in obtaining subsequent workers compensation insurance after the cancellation of the Travelers policy, and SRM's business was negatively impacted as a result of the time and resources that Prabhu had to expend as a result of this litigation. Based on the foregoing authority, SRM had the right to recover nominal damages for successfully bringing its counterclaim for breach of contract, and it was not required to introduce evidence of its actual damages.

(b) Travelers also argues that the jury's award of $57,858.00 in damages is not "nominal" because it is such a large amount. However, the law is clear that "nominal"

9

damages may, in fact, be quite large, and an award cannot be set aside simply because the amount is large, absent evidence of prejudice, bias, or mistake on the part of the jury. *Hilb, Rogal & Hamilton Co. of Atlanta, Inc. v. Holley*, 295 Ga. App. 54, 60 (3) (670 SE2d 874) (2008). Furthermore. "[i]nstead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely." (Citation omitted.) *Wright v. Wilcox*, 262 Ga. App. 659, 662 (2) (586 SE2d 364) (2003).

Here, the jury had the opportunity to weigh the evidence and determine the credibility of the witnesses. In so doing, the jury determined that the amount it awarded to SRM on its counterclaim for breach of contract was appropriate under the circumstances of this case. There was no evidence to show that the award was the result of prejudice, bias, or mistake on the part of the jury. Accordingly, the trial court did not err in denying Travelers' motion for judgment notwithstanding the verdict on SRM's counterclaim for breach of contract on this basis.

2. Travelers also contends that the trial court erred in denying its motion for judgment notwithstanding the verdict on SRM's counterclaim for attorney fees pursuant to OCGA § 13-6-11 because the request for attorney fees was based on a

compulsory counterclaim for breach of contract that was not independent of Travelers' claim for breach of contract. We agree.

"The award of expenses of litigation under OCGA § 13-6-11 can only be recovered by the plaintiff in an action under the language of the statute; therefore, the defendant and plaintiff-in-counterclaim cannot recover such damages where there is a compulsory counterclaim." (Citations omitted.) *Sanders v. Brown*, 257 Ga. App. 566, 570 (c) (571 SE2d 1) (2002). However, "if the counterclaim is an independent claim that either arose separately from the plaintiff's claim or arose after plaintiff's claim, then a plaintiff-in-counterclaim may recover expenses of litigation." (Citation omitted.) Id. Accord *Byers v. McGuire Props., Inc.*, 285 Ga. 530, 540 (6) (679 SE2d 1) (2009); *Singh v. Sterling United, Inc.*, 326 Ga. App. 504, 512-513 (4) (756 SE2d 728) (2014).

Under the Civil Practice Act, "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" OCGA § 9-11-13 (a). Under this Code section, and applying *Byers*, *Singh*, and *Sanders*, we conclude that SRM's counterclaim for breach of contract upon which it based its attorney fees claim is clearly a compulsory

11

counterclaim, and not an independent claim, because it alleges that Travelers acted in bad faith with respect to the underlying transactions that form the basis for Travelers' breach of contract claim, i.e. – the audit of SRM's records, the subsequent billing for the increased premium amount, the cancellation of the policy for nonpayment of the increased premium, and the resulting claim for breach of contract based on nonpayment of the increased premium. Accordingly, the trial court erred in denying Travelers' motion for judgment notwithstanding the verdict on SRM's counterclaim for attorney fees, and the jury's attorney fee award must be reversed.

3. Based on our holding in Division 2, we need not address Travelers' other enumerations of error pertaining to the award of attorney fees to SRM.

4. Travelers contends that the trial court erred in denying its motion for new trial based on the grounds that the verdicts were fatally flawed by virtue of an intrinsic inconsistency which rendered the verdicts void *ab initio*. We disagree.

OCGA § 9-12-4 provides that "[v]erdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." In construing this statute, our Supreme Court has acknowledged that "the presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them. Even if the verdict is . . . susceptible of two

12

constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied." (Citation and punctuation omitted.) *Anthony v. Gator Cochran Construction, Inc.*, 288 Ga. 79, 80-81 (702 SE2d 139) (2010).

Here, the jury was called upon to resolve the parties' interrelated claims arising out of the same contract. One issue was whether SRM had breached the contract for failing to pay *any* amount of the retroactive increase of the premium. The jury found that SRM had breached the contract in this regard, and the jury awarded damages to Travelers in amount that the jury apparently determined was the proper amount of the premium increase for which it was entitled. The other issues for the jury were whether Travelers had breached the contract by failing to act in good faith in conducting the audit and in reclassifying SRM's employees resulting in an exorbitant overcharge for the increased premium, and, if so, whether SRM was entitled to nominal damages as a result of Travelers' failure to act in good faith in resolving the dispute. The jury found that Travelers had breached the contract in this regard, and it awarded nominal damages to SRM in an amount that it deemed appropriate. Construing the verdicts in the light most favorable to uphold their validity, we conclude that the verdicts were neither inconsistent nor contradictory. Accordingly, the trial court did not err in denying Travelers' motion for new trial on this basis.

13

5. Travelers contends that the trial court erred in denying its motions in limine which sought to bar SRM's admission of its subsequent insurer's endorsements for workers compensation insurance coverage. Travelers' argument is without merit.

One of Travelers' motions in limine sought the exclusion of any evidence of risk classifications assigned to SRM employees after the cancellation of the Travelers policy, arguing that such evidence was not relevant to Travelers' claim for breach of contract for nonpayment of the premium. However, SRM sought to admit the documents as demonstrative exhibits in support of its own claim for breach of contract to point out the discrepancies between Travelers' risk classifications of SRM's employees with the risk classifications assigned by SRM's new insurance company. We conclude that the documents were clearly relevant to the issue of whether Travelers had breached its duty of good faith and fair dealing in initially assigning its risk classifications of the SRM employees and in later refusing to reclassify those employees, because the differing risk classifications would have an effect on the proper amount of the increase in premium. Thus, the probative value of such evidence outweighed any potential prejudicial effect.

Travelers' other motion in limine sought the exclusion of the same evidence on hearsay grounds. Immediately prior to trial, and outside the presence of the jury,

14

the trial court held a hearing on the motions in limine. The trial court denied the first motion in limine that was based on relevancy grounds, and it conditionally denied the motion in limine that was based on hearsay grounds, provided that SRM could later authenticate the documents as business records prior to seeking admission of the documents into evidence.

During the trial, SRM sought to authenticate and admit the documents at issue through the testimony of Prabhu, SRM's chief executive officer and sole owner. Prabhu testified that he received the insurance documents from its new insurer at or around the time they were drafted and that he maintained the documents in the ordinary course of his business because he had to show such documents to prospective clients to prove that SRM had insurance coverage as a prerequisite to bidding on contracts, as well as to prove that SRM had insurance coverage to its existing clients in order to remain in compliance with their contracts. SRM then moved to admit the documents as being authenticated. When the trial court asked Travelers' counsel if there was any objection, Travelers' counsel replied "No objection, your Honor."

"To preserve an objection upon a specific ground for appeal, the objection on that specific ground must be made at trial, or else it is waived." (Citation and

punctuation omitted.) *Saye v. Provident Life and Acc. Ins. Co.*, 311 Ga. App. 74, 78 (4) (714 SE2d 614) (2011). Here, as Travelers affirmatively acquiesced in the admission of the documents at issue, the issue of admissibility has been waived for the purposes of appellate review.[2]

6. In its last enumeration of error, Travelers contends that the trial court erred in denying its Request for Charge No. 48 seeking open account interest pursuant to OCGA § 7-4-16. We disagree.

Travelers argued below that SRM was liable for prejudgment interest, and it requested a jury instruction on prejudgment interest applicable to open accounts. Concluding that Travelers was not entitled to prejudgment interest under the circumstances of this case, the trial court did not give the requested charge to the jury.

OCGA § 7-4-16 provides, in pertinent part, that "[t]he owner of a commercial account may charge interest on that portion of a commercial account which has been

---

[2] Even if the documents were to be deemed inadmissable under the business records exception to the hearsay rule, "the admission of hearsay is harmless when it is cumulative of legally admissible evidence showing the same fact." (Citation and punctuation omitted.) *Saye*, supra at 79 (4). SRM's expert, the former insurance commissioner for the State of Georgia, presented testimony concerning the proper classification of SRM's employees which was consistent with the classification contained in the documents at issue.

16

due and payable for 30 days or more[.]" However, there are some circumstances in which a plaintiff may not seek to recover under an open account theory.

> A suit on open account is available as a simplified procedure to the provider of goods and services where the price of such goods or services has been agreed upon and where it appears that the plaintiff has fully performed its part of the agreement and nothing remains to be done except for the other party to make payment. However, when there is a dispute that goes to either . . . [the] terms of the contract, what work was performed, the quality of performance, or cost, then suit on account is not the proper procedure for suit, because there is a factual issue other than nonpayment on the account.

(Citation omitted.) *Lager's, LLC v. Palace Laundry, Inc.*, 247 Ga. App. 260, 264 (2) (543 SE2d 773) (2000). Accord *American Teleconferencing Svcs., Ltd. v. Network Billing Systems, LLC*, 293 Ga. App. 772, 777 (3) (a) (668 SE2d 259) (2008); *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 27 (b) (485 SE2d 563) (1997).

Here, SRM hotly contested such issues as Travelers' good faith performance under the contract and the amount of increased premium that SRM owed under the policy based on Travelers' improper risk classifications of SRM's employees. As there were factual issues to be resolved other than the mere nonpayment of the increased premium, Travelers was not entitled to prejudgment interest under an open

17

account theory of recovery. Accordingly, the trial court did not err in failing to give Travelers' requested charge on open account interest.

For the above reasons, we reverse the trial court's decision on Travelers' motion for judgment notwithstanding the verdict only as it pertains to SRM's counterclaim for attorney fees pursuant to OCGA § 13-6-11. We affirm the verdict and judgment below in all other respects.

*Judgment affirmed in part and reversed in part. McFadden, P.J., and Rickman, J., concur.*