**FOURTH DIVISION**
**McFADDEN, C.J.,**
**DOYLE, P.J., and COOMER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2020**

# In the Court of Appeals of Georgia

A19A2366. VICKERY FALLS, LLC v. ASIH, LLC et al.

DOYLE, Presiding Judge.

This appeal arises from a case filed in regard to a multi-use property in Roswell ("the City") — the Vickery Falls development ("the Development"). Vickery Falls, LLC, ("Vickery") owned one parcel of the Development, which abutted a parcel owned by West Coast Fund ("WCF"), which later sold its interest to ASIH, LLC. After completing certain improvements related to the original plan for the Development, Vickery filed the instant suit, asserting claims of unjust enrichment, quantum meruit, and breach of implied contract against ASIH and WCF and claims for an equitable lien and an easement of necessity or implied easement against ASIH. ASIH filed counterclaims against Vickery for trespass, slander of title, and tortious interference with property rights, and it requested injunctive relief, punitive damages,

and attorney fees; it also filed a cross-claim against WCF, which is not at issue here. Immediately prior to trial, the court addressed numerous motions, and among other things, granted summary judgment to Vickery as to ASIH's counterclaims of slander of title and tortious interference of property and to ASIH and WCF as to Vickery's claims of an implied contract. The remaining claims proceeded to a jury trial.

The jury found for ASIH and WCF as to Vickery's claims of unjust enrichment and quantum meruit, but it found for Vickery as to its claim against ASIH for an implied easement. As to ASIH's counterclaim for trespass, the jury found in favor of ASIH, awarding $50,000 in damages, and it awarded ASIH $180,000 in attorney fees under OCGA § 13-6-11. The trial court denied ASIH's request for ejectment against Vickery. Vickery thereafter filed a motion for new trial and/or motion for judgment not withstanding the verdict ("JNOV"), which the trial court denied.

Vickery now appeals, arguing that the trial court erred (1) by denying its various motions as to ASIH's claim for attorney fees; (2) by failing to grant its motion for JNOV and/or new trial on damages as to ASIH's trespass claim; (3) by denying its motion for JNOV and/or new trial because the verdicts were inconsistent; and (4) by denying its motions for mistrial and/or JNOV because of juror misconduct. For the reasons that follow, we affirm in part and reverse in part.

2

On appeal from a jury verdict we view the evidence "in a light most favorable to the prevailing party" and affirm the verdict "if there is any evidence to support it."[1] "The standard of appellate review of a trial court's denial of a motion for a directed verdict or motion for [JNOV] is the 'any evidence' test."[2]

The record shows that the original single owner of the Development defaulted in 2008, and the Development was parceled out and sold. While under single ownership, the Development was treated by the City under an overall planned unit development ("PUD") scheme, with several common elements including an underground storm-water management system (the "Water Control Structure") and intended to be shared by the entire site, which thereafter meant shared by different parcels. The City required all development plans to comply with certain city ordinances, specifically requiring the Water Control Structure to process storm-water runoff and a parking lot to meet certain parking requirements (the "Mandatory

---

[1] *Paine v. Nations*, 283 Ga. App. 167, 167-168 (641 SE2d 180) (2006).

[2] (Punctuation omitted.) *Bailey v. Annistown Road Baptist Church, Inc.*, 301 Ga. App. 677, 685 (5) (689 SE2d 62) (2009), quoting *Galardi v. Steele-Inman*, 266 Ga. App. 515, 516 (1) (597 SE2d 571) (2004). If "there is any evidence upon which the verdict can be based, the jury is free to disbelieve whatever facts are inconsistent with their conclusion[,] and the [trial] court cannot substitute its conclusion for that of the jury and enter a [JNOV]." *Bailey*, 301 Ga. App. at 686 (5) (punctuation omitted), quoting *King v. Brown*, 280 Ga. 747, 748 (1) (632 SE2d 638) (2006).

3

Improvements"); however, the City did not necessarily require the Mandatory Improvements to be located on a certain place on a parcel.

When Vickery purchased its parcel on April 15, 2015, it consisted of an unfinished six-townhome building site, which had walls, siding, and roofs, but needed certain other items before Vickery could sell the units. When Vickery began construction on the Mandatory Improvements and completing the townhomes, it contacted WCF, which still owned the abutting property, consisting of a concrete foundation for a proposed nine-unit condominium building. Vickery's representative testified that he told WCF he expected them to pay for a portion of the Mandatory Improvements, and WCF did not object.

On September 11, 2015, after Vickery had begun its construction of the Mandatory Improvements, WCF sold its abutting parcel to ASIH, a real estate flipping business located in Israel. ASIH purchased the property in order to sell for a profit, whether or not it completed development before that point. A representative from ASIH saw its parcel in April 2015, but returned to Israel by June, before construction began. Vickery commenced construction in July 2015. In November, 2015, Vickery notified ASIH that it expected to be compensated for the pro rata share of the $268,000 cost for the Mandatory Improvements. Vickery argued that neither

4

WCF nor ASIH protested, objected to, or attempted to stop the construction of the Mandatory Improvements prior to the instant litigation.

At the close of ASIH's case, Vickery moved for a directed verdict on ASIH's claim for punitive damages and for attorney fees under OCGA § 13-6-11, which the trial court denied. After the trial concluded, Vickery moved for JNOV, for a new trial on trespass damages only, or in the alternative, for a new trial on general grounds. The trial court denied Vickery's motion, and this appeal followed.

1. Vickery first argues that the trial court erred by failing to grant its motion for directed verdict and/or denying its motion for JNOV regarding ASIH's claim for attorney fees under OCGA § 13-6-11 because ASIH's trespass counterclaim arose from the same transaction and occurrence as Vickery's claims against ASIH. We agree with Vickery that this award must be reversed.

> As a general rule, only a plaintiff is authorized to recover attorney fees under OCGA § 13-6-11. But [if] a defendant asserts an independent counterclaim, he may recover litigation expenses under OCGA § 13-6-11 in connection with that claim. Specifically, a plaintiff-in-counterclaim cannot recover attorney's fees under OCGA §

5

13-6-11 unless he asserts a counterclaim which is an independent claim *that arose separately from or after the plaintiff's claim.*[3]

In denying Vickery's motion for JNOV as to the issue of attorney fees, the trial court found that ASIH's counterclaim for trespass constituted a claim for a continuing trespass, and thus, it did not arise out of the same transaction and occurrence as Vickery's claims. While it is true that the trespass of having the structures built into ASIH's property does continue because the structures remain, it does not mean that the claim was separate from the subject matter of Vickery's claims related to the first instance of building the structures thereon, its claim for an implied easement to the structures, and Vickery's other theories of recovery from ASIH. Accordingly, we

---

[3] (Citations and punctuation omitted; emphasis in original.) *Sugarloaf Mills Limited Partnership v. Record Town, Inc.*, 306 Ga. App. 263, 266 (2) (701 SE2d 881) (2010). See also *Byers v. McGuire Properties*, 285 Ga. 530, 540 (6) (679 SE2d 1) (2009). Compare with *Beall v. F. H. H. Constr.*, 193 Ga. App. 544, 546 (4) (388 SE2d 342) (1989) (holding that the defendant could recover for a counterclaim of breach of contract it filed in response to the plaintiff's claims for recovery of payments, slander of title, and to remove a lien even though all the claims were related to the same transaction between the parties; "This is not a case where the recovery would amount to a successful counterclaim against [the plaintiff] merely for filing suit.") (punctuation omitted).

reverse the judgment with regard to the attorney fees awarded to ASIH.[4] Based on this conclusion, Vickery's other arguments related to the attorney fee award are moot.

2. Vickery also argues that the trial court erred by failing to grant its motion for JNOV and/or new trial on damages on ASIH's trespass claim because the jury's verdict of $50,000 was excessive and not based on evidence presented at trial. We disagree.

Pretermitting whether this award constituted general damages, nominal damages, or a combination thereof,[5] the trial court did not err by denying Vickery's motion for JNOV as to this issue. Assuming that the jury awarded the entire amount as nominal damages, this Court has explained that "the law is clear that 'nominal' damages may, in fact, be quite large, and an award cannot be set aside simply because the amount is large, absent evidence of prejudice, bias, or mistake on the part of the

---

[4] We note that the Georgia Supreme Court has granted certiorari in the case of *Travelers Property Cas. Co. of America v. SRM Group, Inc.*, 348 Ga. App. 136 (820 SE2d 261) (2018), concerning whether this Court "correctly determined that a defendant asserting a compulsory counterclaim is automatically precluded from seeking an award of the expenses of litigation under OCGA § 13-6-11[.]" See *SRM Group, Inc. v. Travelers Property Cas. Co. of America*, Case No. S19C0473 (granted Aug. 5, 2019). Until that case is decided, however, we continue to apply current Supreme Court precedent. See *Byers*, 285 Ga. at 540 (6). See also *Sponsler v. Sponsler*, 287 Ga. 725, 728 n.2 (699 SE2d 22) (2010).

[5] See *Wright v. Wilcox*, 262 Ga. App. 659, 662 (1) (586 SE2d 364) (2003).

jury."[6] "Furthermore, instead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely."[7] And despite Vickery's argument otherwise, if "there has occurred a trespass, general damages do not have to be proven with any amount to an absolute certainty for recovery of such damages."[8]

Here, there was evidence that Vickery trespassed onto ASIH's property to construct the Water Management System and parking pad without ASIH's consent or agreement. ASIH's representatives testified that it could not erect fencing in places it would prefer because of the structures, and the existence of the structures had affected ASIH's ability to divest itself of the property. Although there was testimony that the value of the property increased since the time ASIH purchased it to the time of trial, that testimony does not require reversal of the jury's determination because a compensable injury can exist even with the increase in price based on market

---

[6] *Travelers Property Cas. Co. of America*, 348 Ga. App. at 140-141 (1) (b), citing *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 295 Ga. App. 54, 60 (3) (670 SE2d 874) (2008).

[7] (Punctuation omitted.) *Travelers Property Cas. Co. of America*, 348 Ga. App. at 141 (1) (b), quoting *Wright*, 262 Ga. App. at 663 (2).

[8] (Punctuation omitted.) *Lanier v. Burnette*, 245 Ga. App. 566, 570 (3) (538 SE2d 476) (2000).

fluctuations. The jury was competent to make a determination of the injury to ASIH based on the testimony and evidence presented. Accordingly, the trial court did not err by denying the motion for JNOV or declining to grant a new trial as to this issue.

3. Vickery contends that the trial court erred by denying its motion for JNOV or for new trial because the verdict was inconsistent. Specifically, Vickery contends that the jury's finding that it has an implied easement to maintain the structures it constructed on ASIH's land as a matter of law precluded the jury's finding that Vickery trespassed on the property to construct the Mandatory Improvements.

"A verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside. However, verdicts are to be reasonably construed and not avoided unless from necessity. The burden is upon the party attacking a verdict to show its invalidity."[9] We are unconvinced that the trial court manifestly abused its discretion by failing to grant a new trial or JNOV based on the verdict. The jury's verdict, reasonably construed, is that although Vickery trespassed on ASIH's property in order to

[9] (Punctuation omitted.) *Bishop Eddie Long Ministries, Inc. v. Dillard*, 272 Ga. App. 894, 903 (8) (613 SE2d 673) (2005). See also *McElrath v. State*, __ Ga. ___ (2) (Case No. S19A1361, decided Feb. 28, 2020) (discussing "'inconsistent verdicts,' 'mutually exclusive verdicts,' and 'repugnant verdicts.'").

9

*construct* the Mandatory Improvements, an easement of implication existed over both parcels in order for the owners to *maintain* common elements of the property to the interest of all the property owners.[10]

4. Vickery also contends that the trial court erred by denying Vickery's motion for new trial/JNOV because of juror misconduct.

On the first day of trial, Juror No. 6 sent a note to the judge, stating that "[w]hen the judge asked if we go to Roswell[,] I said no[.] I was thinking Norcross[.] I do go to Roswell a lot[,] and I do remember hearing something about [Vickery.] I just want to be honest. I am sorry I got it confused."

At the end of the day, while the court was explaining what jurors should expect for the next day, Juror No. 6 raised her hand, and the following transpired:

THE JUROR: Okay. Pertaining to the note that I sent.

THE COURT: You disclosed the information. So what is it about the note, ma'am?

---

[10] See, e.g., *Parris Properties, LLC v. Nichols*, 305 Ga. App. 734, 743-746 (2) (700 SE2d 848) (2010) (explaining that "even if [the defendants created a nuisance] by depositing and storing the pipe fixtures on the property [of the plaintiff], there was evidence that [the plaintiffs committed conversion by] fail[ing] to exercise due care in removing the expensive fixtures by having them dumped at a landfill").

THE JUROR: Well, at the time, I did not know what about the situation — I mean, this whole trial. I didn't know about it. Yesterday when my husband and I were coming home from Buckhead, and we just happened to be over in that direction[,] and he explained the whole entire story to me, the whole process without, obviously, knowing about it.

THE COURT: He explained what whole story to you about what process?

THE JUROR: What was going on here in the court, you know, to — this. This is what I'm saying.

THE COURT: I don't know that I follow.

THE JUROR: He told me about the trial that it was coming up.

THE COURT: How would your husband know about this trial?

THE JUROR: He didn't know it was a trial. He just told me about the situation when we went by the place.

THE COURT: That's a little bit different than what you disclosed a bit earlier. You did not indicate in any of your responses that you, your husband, or anyone else, knew anything about this case or the property. In fact, I don't have any notes to that effect. So you said your husband was an executive. When I inquired, you indicated to me that you didn't

11

know what kind of an executive that he was. I noted that he worked at MiMedx and Biotech.

THE JUROR: Yes.

THE COURT: But you didn't provide any information to the Court or counsel concerning any information that you or a family member had about this trial.

THE JUROR: No. I'm sorry. I'm not saying — my husband knew the situation when we went by. He was just telling me — basically what happened as we were coming down the street. It looked like there was some running water and I said, "I didn't know that was a creek." And he said, "It's not a creek." And he told me what the situation was.

THE COURT: What did he tell you, ma'am? I'm still not following.

THE JUROR: I don't know. I don't mean to be confusing at all. I mean, he was just telling me, I guess, there was a dispute or something with this side and this side or something like that.

THE COURT: That takes me back to my earlier question. How would your husband know that? Does your husband know one of the parties, corporations or anybody involved in this case?

THE JUROR: No.

12

THE COURT: So how would he know there's a dispute?

THE JUROR: I don't know if it was something he read in the paper or a thing on that area. I don't know. I was just trying to be — I just wanted to make sure I had everything out, you know. But I promise I did not know anything about the trial and I know he didn't know about the trial. He was just telling me about that area that, I guess, there was some ongoing something, I guess. I don't know. I'm sorry. I really don't mean to be confusing.

The trial court then released the rest of the jurors while Juror No. 6 stayed behind with counsel and the judge. The trial court allowed the parties an opportunity to ask questions of the juror, who was apologetic but flustered and gave confusing responses. The court then rehabilitated the juror and allowed her to leave, at which point Vickery moved for a mistrial on the basis that the juror's answers indicated she was being dishonest, and the court's attempt to rehabilitate the juror was improper.

Georgia law presumes that potential jurors are impartial, and the burden of proving partiality lies with the party seeking to have the juror disqualified. And a prospective juror's doubt about his or her own impartiality does not demand as a matter of law that he or she be excused for cause. Nevertheless, a potential juror must be excused for cause if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case based on the evidence and the court's charge on the evidence. Furthermore, trial courts have

13

broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience. In fact, a trial court may only be reversed upon a finding of manifest abuse of that discretion.[11]

We discern no manifest abuse of discretion in the trial court's denial of the motion for mistrial or denial of the motion for JNOV as to this point. Vickery contends that the trial court curtailed its ability to question the juror, which in turn has prevented it from meeting its burden to establish that Juror No. 6's responses would have led to a challenge for cause.[12] While we agree that the juror gave muddled, confused answers to the court, Vickery failed to ask for additional questions of the juror and instead moved for a mistrial. Based on the juror's responses at that time, we cannot say that the court manifestly abused its discretion by failing to excuse the juror and grant the motion for mistrial.[13] The juror repeatedly apologized for not giving

---

[11] (Citations and punctuation omitted.) *Wood v. B&S Enterprises, Inc.*, 314 Ga. App. 128, 133 (4) (723 SE2d 443) (2012).

[12] See *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002).

[13] See *Wood*, 314 Ga. App. at 134 (4).

14

more complete information earlier, stated she knew none of the parties, and could be unbiased.[14] Accordingly, this enumeration is without merit.

*Judgment affirmed in part and reversed in part. McFadden, C.J., and Coomer, J., concur.*

---

[14] See id. ("a juror who indicates a willingness to try to be objective and [has no] reservations relate[d] to a party may be eligible for service") (punctuation omitted).