**FIFTH DIVISION**
**McFADDEN, C. J.,**
**RICKMAN and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.***

**November 25, 2020**

# In the Court of Appeals of Georgia

A18A1418. TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA v. SRM GROUP, INC.

COLVIN, Judge.

In 2019, the Supreme Court of Georgia granted SRM Group, Inc.'s petition for

certiorari in order to consider whether this Court had properly reversed a jury's

verdict in favor of SRM Group on its compulsory counterclaim against Travelers

Property Casualty Company of America for attorney fees under OCGA § 13-6-11. See

*Travelers Prop. Casualty Co. of America v. SRM Group, Inc.*, 348 Ga. App. 136, 141-

142 (2) (820 SE2d 261) (2018), cert. granted, August 5, 2019. On certiorari, our

Supreme Court overruled the precedent on which this Court had relied and reversed

Division 2 of our opinion. *SRM Group, Inc. v. Travelers Prop. Casualty Co. of*

*America*, 308 Ga. 404, 410 (3) (841 SE2d 729) (2020), overruling cases including

*Byers v. McGuire Props., Inc.*, 285 Ga. 530, 540 (6) (679 SE2d 1) (2009).[1]

On remand from our Supreme Court, we adopt its decision on this issue as our own. Because our original opinion reversed only as to SRM's counterclaim for attorney fees, see 348 Ga. App. at 145 (2), we now affirm the judgment of the trial court in full.

*Judgment affirmed. Rickman, J., concur. McFadden, C. J. concurs specially.*

---

[1] Travelers had raised a challenge to the evidentiary basis of the jury's award under OCGA § 13-6-11, which our Division 3 mooted in light of our conclusion in Division 2 that attorney fees under that statute were not authorized for compulsory counterclaims such as SRM's. *Travelers Prop. Casualty Co.*, 348 Ga. App. at 141-142 (2), (3). Our Supreme Court's opinion addressed only Division 2 of our decision, and noted that "[n]o party sought certiorari regarding the other portions of the Court of Appeals opinion, so those parts of the Court of Appeals judgment are not affected by our decision." *SRM Group*, 308 Ga. at 405 (1), n. 1. Under these circumstances, we have nothing further to review.

2

A18A1418. TRAVELERS PROPERTY CASUALTY COMPANY

 OF AMERICA v. SRM GROUP, INC.

MCFADDEN, Chief Judge, concurring specially.

I agree with the majority's ultimate conclusion: in light of the decision of our Supreme Court, we must now affirm. But I do not agree with the majority's determination that there is nothing further we need to review before reaching that conclusion.

"Based on our holding in Division 2," we wrote in our former opinion, "we need not address Travelers' other enumerations of error pertaining to the award of attorney fees to SRM." *Travelers Property Cas. Co. of America v. SRM Group*, 348 Ga. App. 136, 142 (3) (820 SE2d 261) (2018). Now that Division 2 of our former opinion has been reversed, we must address those other enumerations of error.

So I concur specially.

1. *Our responsibilities upon remand from the Supreme Court.*

In *Shadix v. Carroll County*, 274 Ga. 560 (554 SE2d 465) (2001), our Supreme Court set out the three steps we must take after that Court reverses one of our opinions:

> when faced with the . . . reversal of one of [our] opinions, [we are] required: (1) to read [the Supreme] Court's opinion within the context of the opinion being reversed; (2) to determine whether any portions of the opinion being reversed were neither addressed nor considered by the Supreme Court; and (3) [to] enter an appropriate disposition with regard to those portions that is consistent with the issues addressed and considered by [the Supreme] Court.

Id. at 563-564 (1). So after we are reversed by our Supreme Court, we must issue an opinion on remand that reconciles our former opinion with theirs. We must assure that any portion of our former opinion not expressly addressed or considered in theirs is made consistent with theirs. In particular we must "determine the impact of the reversal on our previous decision and . . . resolve any reopened issues." *St. Paul Reinsurance Co. v. Ross*, 276 Ga. App. 135, 136 n.1 (622 SE2d 374) (2005). See *Stevens v. Wakefield*, 163 Ga. App. 40 (292 SE2d 516) (1982) ("The issues submitted by the remaining enumerations of error which were rendered moot by our previous decision are reopened by the decision of the Supreme Court."). And we must not

2

interpret the Supreme Court opinion in such a way as to make our opinion internally inconsistent. Cf. *Terrell v. Payne*, 280 Ga. 51, 51-52 (622 SE2d 330) (2005).

2. *Reopened enumerations of error.*

So we must now address the enumerations of error that we previously declined to address. After reading both opinions, we must "determine whether any portions of the opinion being reversed were neither addressed nor considered by the Supreme Court[.]" *Shadix*, 274 Ga. at 563-564 (1). An issue has been addressed or considered if it is discussed in the opinion or if it is identified in the grant of certiorari even though not discussed in the opinion. See id. at 563 n. 13 (1).

On certiorari, our Supreme Court overturned a line of case that had limited the categories of litigants entitled to attorney fees under OCGA § 13-6-11. It had granted certiorari to address the question "whether the Court of Appeals correctly determined that a plaintiff-in-counterclaim asserting a compulsory counterclaim is precluded from seeking an award for the expenses of litigation under OCGA § 13-6-11." 308 Ga. at 405 (1). The soundness of that line of cases, which we had followed in Division 2 of our former opinion, was the only issue upon which the Court granted certiorari and the only issue it discussed in its opinion. The Court neither addressed

3

nor considered Division 3 of our former opinion, in which we held that Travelers'

other enumerations of error regarding the attorney fees award were moot.

So we must proceed to step three of the *Shadix* framework and "enter an

appropriate disposition with regard to [that Division] that is consistent with the [only]

issue[] addressed and considered by [the Supreme] Court." *Shadix*, 274 Ga. at 564

(1).

Since the Supreme Court reversed our Division 2, our Division 3 — which was

"[b]ased on our holding in Division 2," 348 Ga. App. at 142 (3) — is inconsistent

with the only issue the Supreme Court addressed. Should we fail to address the

"reopened issues," *St. Paul Reinsurance Co.*, 276 Ga. App. at 136 n.1, that we

previously declined to address, then our opinion would be internally inconsistent: it

would reject Travelers' argument that a plaintiff-in-counterclaim asserting a

compulsory counterclaim is precluded from seeking an award for the expenses of

litigation under OCGA § 13-6-11, but nonetheless deem moot Travelers' other

challenges to the OCGA § 13-6-11 award, based on the adoption of that now-rejected

argument.

The majority declines to address the two enumerations of error we deemed

moot on the basis of footnote one to the Supreme Court's opinion. In that footnote,

the Court held, "[n]o party sought certiorari regarding the other portions of the Court of Appeals opinion, so those parts of the Court of Appeals judgment are not affected by our decision." 308 Ga. at 405 (1) n. 1. But that footnote simply confirms that our Division 3 declining to address Travelers' other enumerations of error was not implicated in the grant of certiorari. And the Supreme Court did not discuss our Division 3 in its opinion. So we must now "enter an appropriate disposition." *Shadix*, 274 Ga. at 564 (1).

3. *Merits of the reopened enumerations.*

As for the merits of Travelers' other two enumerations of error pertaining to the award of attorney fees to SRM, neither requires reversal of the jury's verdict.

Travelers' enumeration that it is entitled to a judgment notwithstanding the verdict on the attorney fees counterclaim because it is entitled to a judgment notwithstanding the verdict on its breach of contract counterclaim is foreclosed by our affirmance of the breach of contract verdict in Division 1 of our opinion. 348 Ga. App. at 139-141 (1). I would now hold that it fails for that reason.

Also without merit is Travelers' enumeration that it is entitled to a judgment notwithstanding the verdict on the attorney fees counterclaim because SRM failed to adduce any evidence of Travelers' bad faith. As we stated in our prior opinion,

5

[o]n appeal from the denial of a motion for judgment notwithstanding the verdict, we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict. Furthermore, a motion for judgment notwithstanding the verdict should not be granted unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict. A verdict will not be set aside where the evidence construed in favor of the verdict supports it, however slightly.

*Travelers Property Cas. Co. of America*, 348 Ga. App. at 139-40 (citations and punctuation omitted)."Expenses of litigation, including attorney fees, are recoverable under § 13-6-11 when a party has acted in bad faith[, ]has been stubbornly litigious, or has caused the other party unnecessary trouble and expense. An award of attorney fees under OCGA § 13-6-11 will be affirmed if there is any evidence to support it." *City of Hoschton v. Horizon Communities*, 287 Ga. 567, 569 (3) (697 SE2d 824) (2010) (citation and punctuation omitted).

In our former opinion, we stated that the increased workers' compensation insurance premium that was the basis of the parties' dispute resulted from an audit of SRM's employee risk classifications and Travelers' refusal to reclassify those employees. *Travelers Property Cas. Co. of America*, 348 Ga. App. at 136. We stated

6

that "Suresh Prabhu, who was SRM's chief executive officer and sole owner, and John Oxendine, a former insurance commissioner for the [s]tate of Georgia who was qualified as an expert in employee classification for insurance purposes, both testified" that after the audit, Travelers misclassified certain SRM employees. Id. at 138. We stated that

> [o]ther than the issue of whether SRM had breached the contract by failing to pay any portion of the retroactive premium increase, the primary focus of the trial was Travelers' handling of the 2013 audit and Travelers' subsequent refusal to reclassify . . . employees. To that end, Travelers' auditor, Larry Grasso, testified that he initiated the employee classification process by reviewing the job descriptions as they appeared in SRM's payroll documents that were generated by an outside payroll company and by referring to insurance trade publications. He testified that he finalized the employee classification process after having one short conversation and several follow-up e-mails with an administrative assistant who worked in SRM's head office. Although Grasso testified that an employee's risk classification depended on his or her particular job requirements and work environment, he acknowledged that he never visited SRM's worksites or spoke with anyone at SRM regarding its employees' job requirements or work environment. Rather, Grasso claimed that worksite visits and employee interviews were not necessary because, under the normal auditing process, he would get the required information from the owner of the business. Notably, however, Grasso testified that he decided not to contact Prabhu in this case. Furthermore, Grasso's testimony seemed to indicate that he harbored a certain level

7

of indignation toward Prabhu because Prabhu did not meet with him personally during the auditing process.

Id. at 138-139. We noted that Prabhu testified that he provided information about the classifications "to Travelers, that Travelers apparently would not consider this information, and that Travelers simply ignored him both during and after the audit resulting in the retroactive premium increase[,]" id. at 139, which, according to SRM, "was twenty times the price that Travelers had estimated it would be[.]" Id. at 137.

I would hold that, from this evidence, "the jury could have concluded [that Travelers'] actions fell within OCGA § 13-6-11, [so] the trial court did not err when it denied [Travelers'] motion for [judgment notwithstanding the] verdict." *Forsyth County v. Martin*, 279 Ga. 215, 219 (2) (b) (610 SE2d 512) (2005).